[No. C036453. Third Dist. July 12, 2001.]

In re MARINNA J., a Person Coming Under the Juvenile Court Law.
YOLO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and
Respondent, v.
TYRONE J., Defendant and Appellant.

[No. C036922. Third Dist. July 12, 2001.]

In re MARINNA J., a Person Coming Under the Juvenile Court Law.
YOLO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and
Respondent, v.
TYRONE J. et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of the Factual and Procedural History and parts I and II of the Discussion.

732

## COUNSEL

Tyrone J., in pro. per.; and Mario de Solenni, under appointment by the Court of Appeal, for Defendants and Appellants.

Steven M. Basha, County Counsel, Troy B. Smith, Assistant County Counsel, and Elizabeth A. Stoltz, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**MORRISON, J.**—Tyrone J. and Corinna C., the parents of Marinna (the minor), appeal from orders of the juvenile court directing that the Yolo County Department of Social Services (DSS) make efforts to locate an appropriate adoptive family for the minor, denying a motion by Corinna for modification, and terminating their parental rights. (Welf. & Inst. Code, §§ 366.26, 388, 395; further unspecified section references are to the Welfare and Institutions Code.)

Tyrone and Corinna make a variety of claims, including the contention that the juvenile court committed reversible error by failing to apply various provisions of the Indian Child Welfare Act of 1978 (the Act). (25 U.S.C. § 1901 et seq.) In the published part of this opinion, we reject DSS's assertion that its failure to comply with the Act's notice requirements cannot be raised in this appeal because the parents did not raise the objection in the juvenile court. Because the notice requirement is intended, in part, to protect the interests of Indian tribes, it cannot be waived by the parents' failure to raise it. In the unpublished portions of our opinion, we reject the parents' other claims of error.

FACTUAL AND PROCEDURAL HISTORY*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISCUSSION

I, II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III

█ Tyrone and Corinna claim the juvenile court committed reversible error by failing to apply the provisions of the Act. Both parents argue the record fails to reflect that DSS made inquiry into the possible Indian status of the minor and notified the proper parties of the pending dependency proceedings. According to both parents, the court was required to conduct the section 366.26 hearing in accordance with the Act.

In 1978, Congress passed the Act, which is designed to promote the stability and security of Indian tribes and families by establishing minimum standards for removal of Indian children from their families and placement of such children "in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs." (25 U.S.C. § 1902; *Mississippi Choctaw Indian Band v. Holyfield* (1989) 490 U.S. 30 [109 S.Ct. 1597, 104 L.Ed.2d 29].)

To effectuate the purpose of the Act, " 'child custody proceeding[s]' " (25 U.S.C. § 1903(1)) involving, among other proceedings, the termination of parental rights to an Indian child, are subject to special federal procedures. (25 U.S.C. § 1903(1)(i)-(iv).) "Termination of parental rights" means "any action resulting in the termination of the parent-child relationship." (25 U.S.C. § 1903(1)(ii).)

Among the procedural safeguards imposed by the Act is the provision of notice to various parties. Title 25 United States Code section 1912(a) provides as follows: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian *and the Indian child's tribe*, by registered mail with return receipt requested, of the pending

*See footnote, *ante*, page 731.

proceedings and of their right of intervention. *If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary [of the Interior] in like manner,* who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceedings shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary . . . ." (Italics added.)

When this notice provision is violated, an Indian child, parent, Indian custodian, or the Indian child's tribe may petition the court to invalidate the proceeding. (25 U.S.C. § 1914.)

A major purpose of the Act is to protect "Indian children who are members of or are eligible for membership in an Indian tribe." (25 U.S.C. § 1901(3).) For purposes of the Act, " 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" (25 U.S.C. § 1903(4).)

In support of their claims, Tyrone and Corinna rely in part on *In re Kahlen W.* (1991) 233 Cal.App.3d 1414 [285 Cal.Rptr. 507] (*Kahlen W.*). In that case, the court stated: "Notice is a key component of the congressional goal to protect and preserve Indian tribes and Indian families. Notice ensures the tribe will be afforded the opportunity to assert its rights under the Act irrespective of the position of the parents, Indian custodian or state agencies. Specifically, the tribe has the right to obtain jurisdiction over the proceedings by transfer to the tribal court or may intervene in the state court proceedings. Without notice, these important rights granted by the Act would become meaningless." (*Id.* at p. 1421.)

In *Kahlen W., supra,* 233 Cal.App.3d 1414, a social services employee spoke with three different groups of Miwok Indians, attempting to determine the minor's status. In granting the writ sought by the mother of the minor, the appellate court held the department had failed to notify the tribe of its right to intervene in the proceedings as required by the Act. (233 Cal.App.3d at pp. 1418, 1420, 1424, 1426.)

The court rejected the department's contention that the record showed substantial compliance with the notice provisions of the Act. It noted that all pertinent authority plainly required "actual notice to the tribe of both the proceedings and of the right to intervene." (*Kahlen W., supra,* 233 Cal.App.3d at pp. 1421, 1422, italics omitted.) Mere " 'awareness' " of the proceedings is not sufficient under the Act. (*Id.* at p. 1422.)

*Kahlen W., supra,* 233 Cal.App.3d 1414, emphasized notice is mandatory, and that ordinarily failure in the juvenile court to secure compliance with the Act's notice provisions is prejudicial error. The only exceptions lie in situations where "the tribe has participated in the proceedings or expressly indicated [it has] no interest in the proceedings." (233 Cal.App.3d at p. 1424; but see *In re Junious M.* (1983) 144 Cal.App.3d 786, 794, fn. 8 [193 Cal.Rptr. 40].)

The *Kahlen W.* court rejected a suggestion by the department that its noncompliance with the notice provisions of the Act was a result of the mother's failure to cooperate by not providing the department with the roll number and by not timely communicating her ancestry. (233 Cal.App.3d at p. 1424.) As the court pointed out, the Act is intended to protect the interests of the tribe as well as those of the minor's parents. (*Id.* at p. 1425.) Moreover, the minor is entitled to the protection of the Act irrespective of the actions of the parents. (*Ibid.*) Finally, the court rejected the claim that by her silence the mother waived her rights under the Act. (*Ibid.*)

California Rules of Court, rule 1439(f) (further references to rules are to the California Rules of Court), provides in part: "(3) Notice shall be sent to all tribes of which the child may be a member or eligible for membership. [¶] (4) If the identity or location of the parent or Indian custodian or the tribe cannot be determined, notice shall be sent to the specified office of the Secretary of the Interior, which has 15 days to provide notice as required. [¶] (5) Notice shall be sent whenever there is reason to believe the child may be an Indian child, and for every hearing thereafter unless and until it is determined that the child is not an Indian child."

Rule 1439(g)(1) provides in part: "Determination of tribal membership or eligibility for membership is made exclusively by the tribe. [¶] (1) A tribe's determination that the child is or is not a member of or eligible for membership in the tribe is conclusive."

In this case, at the outset of the proceedings DSS obtained information that there was Indian heritage in the families of Tyrone and Corinna. Tyrone reported that the minor was of Cherokee Indian ancestry. While subsequent reports and comments in the record suggest the juvenile court and parties were aware of the issue, there is no indication that notice was sent to any Cherokee tribe, or to the Bureau of Indian Affairs (BIA).

The Act requires DSS to notify "the Indian child's tribe" of the proceedings if "the court knows or has reason to know that an Indian child is involved." (25 U.S.C. § 1912(a).) Here, the court had reason to know the

minor was an Indian child of Cherokee heritage. The Act continues: "If the identity or location of . . . the tribe cannot be determined, such notice shall be given to the [BIA] . . . ." (*Ibid.*)

The Federal Register lists the recognized Indian entities. That list contains three Cherokee entities. Those entities are the Cherokee Nation of Oklahoma, the Eastern Band of Cherokee Indians of North Carolina, and the United Keetoowah Band of Cherokee Indians of Oklahoma. (61 Fed.Reg. 58211 (Nov. 13, 1996).)

This court recently held: "Neither the Act nor the various rules, regulations, and case law interpreting it requires [a child services department] or the juvenile court to cast about, attempting to learn the names of possible tribal units to which to send notices, or to make further inquiry with BIA." (*In re Levi U.* (2000) 78 Cal.App.4th 191, 199 [92 Cal.Rptr.2d 648].) In *Levi U.*, however, we observed that, when a party proffers the name of a tribe, there is a duty to notify the tribe. There, "the lack of information suggesting anyone in the family had a specific tribal affiliation constituted a determination that neither appellant nor the minor was eligible to become tribal members." (*Id.* at p. 198.) Here, on the other hand, such information *was* provided.

DSS claims that, by failing to raise the issue of the applicability of the Act in the juvenile court after the social worker's determination that the Act did not apply, Tyrone and Corinna are foreclosed from tendering the issue in these appeals. DSS also argues the parents could have made their claims in appeals from the disposition order. In support of these contentions, DSS relies primarily on *In re Pedro N.* (1995) 35 Cal.App.4th 183 [41 Cal.Rptr.2d 819].

In *In re Pedro N., supra,* 35 Cal.App.4th at page 185, the mother of two allegedly Indian minors appealed from an order terminating her parental rights on the ground that the social services department had provided inadequate notice of earlier dependency proceedings as required by the Act.[1] The Court of Appeal held that, by her failure to timely challenge the juvenile court's decision to proceed to disposition, the mother had waived her right to raise Act notice issues. (*Ibid.*) Noting she could have challenged the juvenile court's action at the dispositional hearing, the court concluded she was foreclosed from raising the notice issue in an appeal from an order terminating parental rights. (*Id.* at pp. 189-190.)

---

[1] The department had sent notice to BIA but, even after learning the name of a federally recognized tribe at disposition, failed to notify that tribe. (*In re Pedro N., supra,* 35 Cal.App.4th at p. 187.)

In reaching its decision, the appellate court emphasized that "all persons involved" were aware of the possibility, early on, that the Act might be applicable. (*In re Pedro N., supra,* 35 Cal.App.4th at p. 190.) The court observed that it was not adjudicating the rights of any tribe regarding the minors. (*Id.* at p. 191.) The court also rejected the mother's claim that title 25 United States Code section 1914 preempted California law, which characterized her challenge as untimely.[2] (35 Cal.App.4th at p. 190.) The court determined that federal law did not "authorize a court to defer or otherwise excuse a parent's delay in presenting his or her petition until well after the disputed action is final." (*Ibid.*) Finally, the court asserted that if Congress had intended to permit an allegation of a violation of the Act to be tendered at any point in the proceedings, it would have so stated. (*Ibid.*)

In her reply brief, Corinna argues that, based on her interests and those of an allegedly Indian child under the Act, the waiver doctrine does not apply under the circumstances of this case. We agree with Corinna that waiver cannot be invoked to preclude consideration of the claims of Tyrone and Corinna here, but our conclusion is based on reasons different from those tendered by Corinna.

Under the Act, "Indian tribe" has a very specific meaning. It includes only those groups or communities of Indians recognized as eligible to receive certain services from BIA. (25 U.S.C. § 1903(8); see 58 Fed.Reg. 202 (Oct. 21, 1993) pp. 54364, 54366.) As we have seen, the Act requires notice to the tribe if it is identified and may be the child's affiliation. (25 U.S.C. § 1912(a).) That notice is absolutely critical under the Act, for one of the Act's major purposes is to protect and preserve Indian tribes. (25 U.S.C. § 1901.) In fact, under certain circumstances not present in this case, an Indian tribe possesses exclusive jurisdiction over child custody proceedings involving Indian children. (25 U.S.C. § 1911(b).)

With this background, we examine the waiver issue, particularly as it relates to the interests of Indian tribes. In this case, Tyrone identified the Cherokee Tribe. As we have seen, there are three such tribes, federally recognized and thus given rights under the Act. One of those rights is found in 25 United States Code section 1914, which provides in part that the Indian child's tribe may petition any court to invalidate a child dependency proceeding on a showing of a violation of the notice provisions of the Act.

---

[2]Title 25 United States Code section 1914 provides: "Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title."

Here, the record does not reflect that DSS sent notice of the proceedings, either to any of the three Cherokee tribes or to BIA. As a result, it is unlikely that those tribes had notice of the dependency proceeding, and thus virtually certain that they were unable to assert their rights under the Act. Under these circumstances, it would be contrary to the terms of the Act to conclude, as the court did implicitly in *In re Pedro N., supra,* 35 Cal.App.4th 183, that parental inaction could excuse the failure of the juvenile court to ensure that notice under the Act was provided to the Indian tribe named in the proceeding.

We conclude that, on the record of this case, where the notice requirements of the Act were violated and the parents did not raise that claim in a timely fashion, the waiver doctrine cannot be invoked to bar consideration of the notice error on appeal. Our conclusion is consistent with the protections afforded in the Act to the interests of Indian tribes. To the extent *In re Pedro N., supra,* 35 Cal.App.4th 183, reached a different result, we respectfully disagree with it.[3]

Lacking proper notice, the proceedings in this case did not produce a valid termination of parental rights. The Act places the duty on the party seeking to terminate parental rights to notify known tribes. (25 U.S.C. § 1912(a).) DSS did not do so. It is for the juvenile court, not DSS or its social workers, to determine whether the Act applies under a given set of circumstances.

▮▬▬ We agree with the *Kahlen W.* court that "[t]he juvenile court's failure to secure compliance with the notice provisions of the Act is prejudicial error." (*Kahlen W., supra,* 233 Cal.App.3d at p. 1424.)[4]

---

[3]Our decision does not mean that the waiver doctrine cannot be invoked to defeat the claims of parents regarding other provisions of the Act. For example, failure to object in the juvenile court waives both the right to proof beyond a reasonable doubt and to expert testimony under the Act. (*In re Riva M.* (1991) 235 Cal.App.3d 403, 410-412 [286 Cal.Rptr. 592].) In those situations, presumably the tribe has been notified and given an opportunity to participate in the proceedings. If the tribe chooses not to intervene, then it is not unreasonable to expect that the tribe itself can be deemed to have waived any defects in the proceedings.

[4]We note the Act's requirement that DSS provide notice to the Indian entities and BIA in cases in which the identity and location of the minor's possible tribal entity is known does not place a heavy burden on DSS. Here, it was simple to determine, from the list of recognized Indian entities, the entities to which DSS was required to give notice or, if uncertainty existed, to simply notify BIA.

To satisfy the notice provisions of the Act and to provide a proper record for the juvenile court and appellate courts, DSS should follow a two-step procedure. First, it should identify any possible tribal affiliations and send proper notice to those entities, return receipt requested. (Rule 1439(f).) Second, DSS should provide to the juvenile court a copy of the notice sent and the return receipt, as well as any correspondence received from the Indian

## Disposition

The orders of the juvenile court terminating the parental rights of Tyrone and Corinna are reversed, and the matter is remanded to the juvenile court with directions to order DSS to provide each of the three Cherokee tribes with proper notice of the proceedings under the Act. If, after receiving notice under the Act, no tribe indicates the minor is an Indian child within the meaning of the Act, then the juvenile court shall reinstate the order terminating parental rights.

In all other respects, the judgment is affirmed.

Scotland, P. J., and Nicholson, J., concurred.

---

entity relevant to the minor's status. If the identity or location of the tribe cannot be determined, the same procedure should be used with respect to the notice to BIA.