45 Cal.Rptr.3d 591 (2006)
140 Cal.App.4th 1524
In re JOSEPH P. et al., Persons Coming Under the Juvenile Court Law.
Kern County Department of Human Services, Plaintiff and Respondent,
v.
Michael P., Defendant and Appellant.
No. F049193.
Court of Appeal, Fifth District.
June 30, 2006.
*592 Konrad S. Lee, Riverside, under appointment by the Court of Appeal, for Defendant and Appellant.
B.C. Barmann, Sr., County Counsel, and Jennifer E. Zahry, Deputy County Counsel, for Plaintiff and Respondent.

OPINION
HARRIS, Acting P.J.
Michael P. appeals from an order terminating his parental rights (Welf. & Inst. Code, § 366.26) to his son and daughter.[1] Much earlier in the proceedings, the court determined, based on information it received from the Bureau of Indian Affairs (BIA), that the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) did not apply to the children's case. Eleven months later at the termination hearing, appellant through his attorney claimed for the first time that he was Mohican. The *593 court observed it had not heard anything that would justify changing the previous finding and proceeded to make its termination findings and orders. Appellant contends the court should have suspended the proceedings and sent new ICWA notice to the tribe. As discussed herein, we disagree and will affirm.

PROCEDURAL AND FACTUAL HISTORY
Because appellant's late claim of Mohican Indian heritage and the court's disinclination to act on that claim forms the basis for this appeal, we limit our summary of the record to the facts relevant to the issue raised.
The Kern County Department of Human Services (the department initiated the underlying dependency proceedings on October 13, 2004, as to appellant's two toddler-aged children. At the time, appellant's and the mother's regular use of methamphetamine disabled them from providing the children with adequate care and supervision. During the detention hearing conducted on the same date, the mother's attorney represented to the court that his client had "Indian heritage by way of Tahon Indian tribe."[2] Later in the same hearing, appellant's trial counsel advised the court:
"The father does believe he has American Indian heritage. He says he actually has an enrollment number, but he doesn't remember from which tribe. So he'll have to give that to the social worker.... I can't provide a tribe name."
A day earlier, a social worker spoke with appellant, who stated he and his brother were the only surviving members of a federally-recognized tribe. When asked the name of his tribe and his membership number, appellant replied he and his brother were not members of a tribe, but he was told he could be.
Later in October 2004, the department mailed out forms then in use to the BIA and the parents for notice and to confirm the children's status as Indian children. The request for confirmation form included identifying information about the father and his relatives. It is undisputed that the department's notice efforts complied with ICWA requirements.
On November 9, 2004, the date of the jurisdictional hearing, the department filed with the court a letter received from the BIA stating that ICWA was not applicable to the children's dependency. County counsel for the department in turn asked the court to find this was "not an ICWA case." There being no objection or argument lodged, the court made the requested finding and thereafter proceeded to exercise its jurisdiction over the children. A month later, at the dispositional hearing, the court reiterated its finding that ICWA did not apply in this case. During that hearing, the court also adjudged the children dependents, removed them from parental custody, and ordered reunification services. Notably, neither parent appealed from the disposition.
Over the next six months, neither parent made much effort to reunify with their young children. Their inaction led the court to terminate reunification services and set the case for a section 366.26 hearing on September 6, 2005, to select and implement a permanent plan for each child.
At the September 6th hearing, the department submitted the matter on its social study which included an assessment that each child was adoptable as well as a recommendation that the court find the *594 children adoptable and terminate parental rights. In response, counsel for appellant stated:
"... On behalf of the Father, your Honor, we would be objecting to the recommendation.
"Also, for the record, the Father is claiming this morning, although he has claimed in the past to have unknown American Indian heritage, he is Mohican, that he is a registered member of the tribe and he does not have his registration number with him, and that that tribe is in upstate New York."
The department countered by reminding the court of the previous ICWA inquiry made and the court's November 2004 finding. County counsel added "[s]o unless [appellant] has new evidence, I believe we are going to ask the Court to move forward this morning."
Apparently, appellant had nothing further to offer, as the court observed:
"... I haven't heard anything that would justify changing the finding that was previously made."
The court thereafter found each child adoptable and terminated parental rights.

DISCUSSION

Appealability
As a preliminary matter, respondent complains appellant has forfeited his opportunity to challenge the court's decision not to reopen the ICWA issue because he never challenged, by appeal or writ petition, the court's 2004 finding that ICWA did not apply. The department relies heavily on this court's decision in In re Pedro N. (1995) 35 Cal.App.4th 183, 41 Cal.Rptr.2d 819. Despite respondent's argument otherwise, we fail to see how appellant has forfeited review of the juvenile court's implicit decision not to reopen the issue of ICWA notice.
In re Pedro N., supra, involved a situation in which a parent provided Indian heritage information at a dispositional hearing upon which neither the court nor the child welfare service department apparently acted. The mother did not challenge the court's inaction, however, until the court terminated her rights approximately two years later. We held that because the mother could have challenged the court's decision to proceed without giving ICWA notice at the dispositional hearing but did not do so, she was foreclosed from raising the issue on appeal from the order terminating her parental rights. (In re Pedro N., supra, 35 Cal.App.4th at p. 189, 41 Cal.Rptr.2d 819.)
Appellant in this case does not seek to challenge the juvenile court's 2004 finding. Indeed, he acknowledges its propriety. He disputes rather the manner in which the court handled the matter at the September 2005 termination hearing. Having filed a timely notice of appeal from the court's September 2005 decision, appellant is entitled to our review.

ICWA Notice
As previously mentioned, appellant contends that once he claimed Mohican heritage, the juvenile court should have stopped the section 366.26 hearing and required the department to provide ICWA notice to the Mohican tribe. He cites well-settled case law regarding the importance of ICWA notice, the low threshold for giving notice, and the prerogative of a tribe, not a state court, to determine Indian child status. (See e.g. In re Kahlen W. (1991) 233 Cal.App.3d 1414, 1421, 285 Cal.Rptr. 507 & In re Junious M. (1983) 144 Cal. App.3d 786, 792, 193 Cal.Rptr. 40.) Respondent counters that given the prior notice to the BIA, along with appellant's inconsistent statements about possible *595 tribal membership, the trial court properly could conclude the original notice to the BIA sufficed and ICWA required no further notice.
ICWA requires notice be given pursuant to its terms whenever "the court knows or has reason to know" the child is an Indian child. (25 U.S.C. § 1912(a).)[3] Federal Guidelines on ICWA  which urge a liberal construction of ICWA to further its preferences  have interpreted "reason to know" to mean "reason to believe." (Guidelines; Guidelines for State Courts; Indian Child Custody Proceedings (44 Fed.Reg. 67584-67595, at p. 67586 (Nov. 26, 1979).) In turn, California courts have adopted "reason to believe" as the relevant standard and have set a low threshold to trigger the notice requirements of the federal law. (In re Kahlen W., supra, 233 Cal.App.3d at p. 1422, 285 Cal.Rptr. 507; In re Junious M., supra, 144 Cal.App.3d at p. 788, 193 Cal.Rptr. 40.) In other words, the Indian status of a dependent child need not be certain. (In re Kahlen W., supra, 233 Cal.App.3d at p. 1422, 285 Cal.Rptr. 507.) A minimal showing that the child may be an Indian child is all that is required. (In re Antoinette S. (2002) 104 Cal.App.4th 1401, 1407, 129 Cal. Rptr.2d 15.)
This case is a classic example of the foregoing. At the outset, appellant claimed Indian heritage but could not identify a particular tribe. Consequently, there was reason to believe appellant's children might be Indian. ICWA directs that if the identity of the tribe cannot be determined, the notice which would otherwise be sent to the tribe shall be given in the same manner to the Secretary of the Interior's designee, the BIA. The BIA in turn shall have 15 days after receipt to provide the requisite notice to the tribe. (25 U.S.C. § 1912(a).)
"Under the statutory scheme, the burden of identifying and providing notice to the proper tribe in these circumstances shifts from the state court to the [the BIA], who presumably has more resources and skill with which to ferret out the necessary information." (In re Kahlen W., supra, 233 Cal.App.3d at p. 1422, 285 Cal.Rptr. 507.)
It is undisputed that the department in this case complied with ICWA by sending the requisite notice and family-identifying information to the BIA. Furthermore, the BIA responded to the department's inquiry, stating that ICWA did not apply to these proceedings. As one appellate court has explained,
"`Absent a contrary determination by the tribe that is alleged to be the Indian child's tribe, a determination by the Bureau of Indian Affairs that a child is or is not an Indian child is conclusive.' (Guidelines, supra, at p. 67586.) The commentary explains, `Because of the *596 Bureau of Indian Affairs' long experience in determining who is an Indian for a variety of purposes, its determinations are also entitled to great deference. [Citation.]'" (In re Junious M., supra, 144 Cal.App.3d at p. 794, 193 Cal.Rptr. 40.)
It was under these circumstances that the juvenile court ruled in 2004 that ICWA did not apply to these proceedings. Although appellant acknowledges that the department complied with ICWA notice requirements in 2004, the BIA determined ICWA was inapplicable and the court ruled accordingly, he essentially ignores the effect of these circumstances once he claimed Mohican Indian heritage at the 2005 section 366.26 hearing. He apparently assumes his claim rendered those previous events meaningless.
However, appellant fails to cite and we are unaware of any legal authority supporting such a position. To the extent appellant would argue his claim of Mohican Indian heritage created a new "reason to believe" his children may be Indian, we are not persuaded.
First, appellant's approach would render useless ICWA's provision for alternative service of notice on BIA and the trial court's ability to defer to a BIA determination. It would result in potentially-tremendous, judicial inefficiency as well as abuse.
Second, although ICWA does create a remedy to invalidate a dependency action (25 U.S.C. § 1914), that remedy depends, in relevant part, on there having been a violation of any provision of section 1912 regarding notice. Here, it is undisputed that section 1912 was not violated in this case.
Third, existing case law describing the threshold for giving ICWA notice involves situations where there was no compliance with ICWA despite reason to believe that a dependent child may be an Indian child. Those factual scenarios are so dissimilar to this matter as to be of little use in our analysis. Here, at the point appellant claimed heritage in a particular Indian tribe, there had already been full compliance with ICWA's notice requirements as well as a BIA determination that the act was inapplicable and a court's subsequent decision that ICWA was inapplicable.
Moreover, given the record in this case, appellant's late claim of Mohican Indian heritage did not compel the court to find a new reason to believe appellant's children may be Indian. Here, the department complied with the notice requirements and no tribe, Mohican or otherwise, had come forward to identify the children as Indian. Alternatively, we agree with respondent that the court could decide what weight to give appellant's last-minute Mohican heritage claim given his prior inconsistent statements on the subject, the lack of any explanation for the lateness of his claim, and the fact that he first voiced his claim on the date set for the children's permanency planning hearing.
A final note. Our opinion should not be read to hold once an ICWA determination has been made, it is set in stone and cannot be undone. When circumstances change or new evidence emerges calling into question a prior ruling, California's dependency scheme provides an "`escape mechanism'" through section 388 to allow a court to consider new information. (In re Marilyn H. (1993) 5 Cal.4th 295, 309, 19 Cal.Rptr.2d 544, 851 P.2d 826.) We easily can envision situations in which a parent could pursue relief pursuant to section 388 from a prior determination that ICWA did not apply. Simply naming a tribe alone, however, in our view would not amount to changed circumstances or new evidence when the parent previously stated he did *597 not know his tribal heritage. At a minimum, the parent must explain on what basis he is now claiming heritage in the particular tribe. While section 388 also requires that modification be in the child's best interests, that element can be easily satisfied in the case of ICWA notification because the ICWA is based on a presumption that it is in the best interests of an Indian child not to be separated from the tribe. (In re Kahlen W., supra, at 1425, 285 Cal.Rptr. 507.)
For all the foregoing reasons, we conclude the juvenile court did not err by refusing to order new ICWA notice.

DISPOSITION
The order terminating parental rights is affirmed.
WE CONCUR: WISEMAN and GOMES, JJ.
NOTES
[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[2] "Tahon" is apparently a phonetic spelling of "Tejon." The Tejon tribe is not federally recognized, an ICWA requirement (25 U.S.C. § 1903(8)).
[3] 25 United States Code section 1912(a) states:

"In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: Provided, That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding."