35 Cal.App.4th 183 (1995)
41 Cal. Rptr.2d 819
In re PEDRO N. et al., Persons Coming Under the Juvenile Court Law.
FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
NADINE S., Defendant and Appellant.
Docket No. F022235.
Court of Appeals of California, Fifth District.
May 26, 1995.
*184 COUNSEL
Marilyn B. Miles, under appointment by the Court of Appeal, for Defendant and Appellant.
*185 Phillip S. Cronin, County Counsel, and William G. Smith, Deputy County Counsel, for Plaintiff and Respondent.
OPINION
STONE (W.A.), J.
Nadine S. appeals from the order terminating her parental rights (Welf. & Inst. Code, § 366.26) to Pedro N. and Margie N.[1] Claiming her children came within the ambit of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.), she contends respondent Fresno County Department of Social Services (Department) gave inadequate notice to the proper authorities as required by the ICWA. Consequently, she argues the juvenile court lacked the authority to terminate her rights. Notwithstanding our opinion in In re Kahlen W. (1991) 233 Cal. App.3d 1414 [285 Cal. Rptr. 507] and federal law cited by the mother, we hold she is foreclosed from raising ICWA notice issues by her failure to challenge timely the juvenile court's action.

FACTS
On June 14, 1992, Nadine S. became severely intoxicated from drinking to the point that, at approximately midnight, she walked with her children in front of an on-coming vehicle. Both Pedro, then four years old, and Margie, then approximately one and a half years old, suffered serious injuries. Consequently, the juvenile court adjudged the children dependents, having determined the children suffered serious physical harm from their mother's inability to provide care (§ 300, subd. (b)). Due to the serious risk of detriment, the children were removed from their mother's care. The mother pled guilty to felony child endangerment (Pen. Code, § 273a, former subd. (1)).
Despite 12 months of services, the mother was unable to alleviate her alcohol problem. As a result, the court terminated reunification efforts in August 1993. After numerous continuances, the court ultimately terminated the mother's parental rights in August 1994 after finding both children adoptable.

DISCUSSION
The mother contends Pedro and Margie are Indian children within the meaning of the ICWA and were denied erroneously the protections afforded *186 by the ICWA. From the outset of this case, there was reason to believe Pedro and Margie could be Indian children. When the Department initiated these dependency proceedings on June 18, 1992, it marked a box on the juvenile dependency petition form (Judicial Council form JV-100), which states, "Child may come under the provisions of the [ICWA]." At the detention hearing the following day, the mother, through her counsel, stated that she was a full-blooded member of the Mono Indian Tribe.
The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes and families by establishing certain minimum federal standards in juvenile dependency actions. (In re Kahlen W., supra, 233 Cal. App.3d 1414, 1421; 25 U.S.C. § 1903(1).) When a state court "knows or has reason to know that an Indian child is involved," a duty to give notice, as discussed below, arises. (25 U.S.C. § 1912(a); see also Adoption of Lindsay C. (1991) 229 Cal. App.3d 404, 408 [280 Cal. Rptr. 194].) The Indian status of the child need not be certain in order to trigger notice. (In re Kahlen W., supra, 233 Cal. App.3d at p. 1422.) Whether the minor is in fact an Indian child is an issue for the tribe or, alternatively, the Bureau of Indian Affairs (BIA) to determine. (In re Junious M. (1983) 144 Cal. App.3d 786, 792, 794 [193 Cal. Rptr. 40].)
According to the ICWA, if a party seeks foster care placement or termination of parental rights regarding a child believed to be Indian, that party shall notify the parent or Indian custodian and the child's tribe "by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a).)[2] If the identity or location of the tribe cannot be determined, the same notice shall be given to the BIA. (25 U.S.C. § 1912(a); 25 C.F.R. § 23.11(b)(12) (1994); In re Kahlen W., supra, 233 Cal. App.3d at p. 1422.)
The requisite notice to the tribe or BIA serves a twofold purpose. First, it enables the tribe or BIA to investigate and determine whether the minor is an "Indian child." An Indian child must be either: (1) a member of an Indian tribe or (2) eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4); In re Junious M., supra, 144 Cal. App.3d at p. 796.) Secondly, it advises the tribe or BIA of the *187 proceedings and the tribe's right to exercise its jurisdiction in the matter or at least intervene in the proceedings. (25 U.S.C. § 1911; In re Kahlen W., supra, 233 Cal. App.3d at p. 1421.)[3]
At the July 13, 1992, jurisdictional hearing in this matter, county counsel advised the court that on June 22 the Department sent ICWA notice of the hearing. On the basis of its understanding that the Mono Tribe was not federally recognized, the Department sent the notice to the BIA rather than the tribe. Soon after the BIA notified the Department that it was unable to confirm the family's tribal membership; it needed the identity of the reservation or rancheria with which the mother was associated. When county counsel brought this up at the July 27, 1992, disposition hearing, counsel for the mother volunteered the name "North Fork." There was no further discussion regarding ICWA notice. At the conclusion of the hearing, the court removed the children from the mother's custody and ordered foster care placement for the children and reunification services for the mother. It did not postpone its disposition to await a response from the BIA or the tribe.
The Mono Indian Tribe is not a federally recognized Indian entity. (53 Fed.Reg. 52829, 52831 (Dec. 29, 1988).)[4] Thus, a question arose as to the identity of the mother's tribe. Under these circumstances, the Department chose to provide alternative notice to the BIA. (25 U.S.C. § 1912(a).) The mother does not challenge and thus we need not comment on the propriety of the Department's choice. Instead, she asserts that once she claimed to be a member of the Northfork Rancheria, the Department was obligated under the ICWA (25 U.S.C. § 1912(a)) to notify the tribe, not the BIA. As the mother points out, the Northfork Rancheria of Mono Indians of California is a federally recognized tribe. (See 53 Fed. Reg. 52829, 52831, supra.)
There is no record that the Department notified the Northfork Rancheria pursuant to the ICWA. Instead, the record discloses the BIA subsequently advised the Department: "Our office has completed the research on the Indian heritage of the children. According to our records, Margie and Pedro *188 possess 15/32 degree of Mono/Cassons (Yocut)/Choinimni Indian Blood. We are enclosing a Certificate of Degree of Indian Blood (CDIB) for the two children in accordance with California Assembly Bill 1418, which requires that a CDIB is issued to the adoption agency for every child of Indian descent subject to an adoption. The CDIB is an official document which identifies the child's Indian heritage; furthermore, this document is utilized to determine eligibility for Bureau of Indian Affairs services. Please provide a copy of the certificate to the children's legal guardian and retain the original in their permanent case file.
"Furthermore, neither the biological mother of the children nor the maternal grandparents are listed in our records as a member of a federally recognized tribe. Therefore, it appears that the children are not subject to the provisions of the Indian Child Welfare Act."
In arguing the Department failed to comply with the notice requirements of the ICWA, the mother is quite vague about the precise nature of the court's error. Instead, she simply urges this court to reverse the termination order. As we view this case, however, it appears the mother's notice issue relates to the juvenile court's dispositional orders of July 1992. If, as the mother argues, the Department should have notified the Northfork Rancheria of these juvenile court proceedings pursuant to the ICWA, then it would have been error for the juvenile court to proceed with its disposition of removal and foster care placement. Under the ICWA, no foster care placement or termination of parental rights proceeding shall be held until at least 10 days after receipt of notice. (25 U.S.C. § 1912(a).) In addition, when, after notification, the tribe or BIA determines a minor is an Indian child for the purposes of the ICWA:
(1) the tribe may elect to exercise its jurisdiction or intervene in the matter;
(2) active efforts must be made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family;
(3) no foster care placement may be ordered absent clear and convincing evidence including qualified expert witness testimony that continued parental custody is likely to result in serious emotional or physical damage to the child; and
(4) the court may not terminate parental rights absent proof beyond a reasonable doubt including qualified expert witness testimony that continued parental custody is likely to result in serious emotional or physical damage to the child. (25 U.S.C. § 1912(a)-(f).)
*189 Also, there are special rules in the ICWA dealing with foster care and preadoptive placements. (25 U.S.C. § 1915.)
In other words, if the mother is correct that the Department should have notified the Northfork Rancheria, the juvenile court should have continued the dispositional hearing until at least 10 days after the department completed service of the requisite notice. This the court did not do; instead, it proceeded with its disposition pursuant to California's dependency statutory scheme, rather than waiting to see whether it should follow the stricter standards of the ICWA or conceivably even transfer jurisdiction to a tribal court. (See 25 U.S.C. §§ 1911, 1912, & 1915.)
(1) Although the proceedings leading up to and including the juvenile court's disposition were appealable (In re Eli F. (1989) 212 Cal. App.3d 228, 233 [260 Cal. Rptr. 453]; § 395), the mother did not raise the question of notice until the court terminated her rights approximately two years later. Appellate jurisdiction to review an appealable order depends upon a timely notice of appeal. (In re Elizabeth G. (1988) 205 Cal. App.3d 1327, 1331 [253 Cal. Rptr. 161].) An appeal from the most recent order entered in a dependency matter may not challenge prior orders for which the statutory time for filing an appeal has passed. (In re Elizabeth M. (1991) 232 Cal. App.3d 553, 563 [283 Cal. Rptr. 483].) Here, the mother could have challenged the court's decision to proceed at the dispositional hearing and did not do so. We therefore conclude she is foreclosed from raising the issue now on appeal from the order terminating her parental rights.
At oral argument before this court, counsel for the mother conceded she could have raised the notice issue by an appeal from the juvenile court's July 1992 dispositional order. Nevertheless, she urges us to reach the merits of her claim on two alternative theories. First, she relies on this court's opinion in In re Kahlen W., supra, 233 Cal. App.3d 1414. Secondly, she claims federal law preempts us from concluding her challenge is untimely. As discussed below, neither of these arguments is persuasive.
We have no quarrel with our earlier decision in Kahlen W.; however, it dealt with an issue discrete from the one presented here. In In re Kahlen W., supra, 233 Cal. App.3d 1414, we held that if there is no showing the mother knew the consequences of Indian status and knowingly relinquished them, then by her silence she has not waived her rights under the Act. (In re Kahlen W., supra, 233 Cal. App.3d 1414, 1425.) However, Kahlen W. did not deal with waiver of an appellate remedy created by the failure to challenge the court's apparent earlier decision not to apply the ICWA. The parent in Kahlen W. promptly challenged a juvenile court's refusal to continue a dependency *190 hearing until a tribe could determine whether the child was a member of the tribe. (Kahlen W., supra, 233 Cal. App.3d at pp. 1418, 1420.) The holding concerned whether, under those circumstances, the mother raised the issue of her Indian heritage in a timely fashion. (Kahlen W., supra, 233 Cal. App.3d at pp. 1424-1425.) Here, in contrast, all persons involved were aware at the dispositional hearing, and earlier, of the possibility that the ICWA was applicable. Nevertheless, the mother, represented by counsel, did not contest the proceedings by a timely appeal.
(2) In arguing federal preemption, the mother cites the following language in the ICWA: "Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections [1911, 1912, and 1913 of this title]." (25 U.S.C. § 1914.) She interprets this language as preempting California law which would characterize her ICWA challenge as untimely. By her argument, the mother raises a question of first impression. She does not cite nor has our research discovered any case law which supports her interpretation.
In our view, 25 United States Code section 1914 confers standing upon a parent claiming an ICWA violation to petition to invalidate a state court dependency action. It may even excuse a parent's failure to raise an ICWA objection in the trial court. (See Matter of L.A.M. (Alaska 1986) 727 P.2d 1057, 1059-1060.) However, it does not authorize a court to defer or otherwise excuse a parent's delay in presenting his or her petition until well after the disputed action is final. Nothing in the language of the section supports the mother's view. We recognize courts liberally construe the ICWA for the benefit of Indians. (Matter of L.A.M., supra, 727 P.2d at p. 1060, citing Preston v. Heckler (9th Cir.1984) 734 F.2d 1359, 1369.) However, the construction the mother proposes for 25 United States Code section 1914 is not liberal; it is unreasonable given the statutory language.
Had the Congress intended to permit a parent to allege an ICWA violation at any point in the proceedings, it could well have so stated. Indeed, in another portion of the ICWA (25 U.S.C. § 1911(c)), the Congress conferred the right to intervene in any dependency or termination action "at any point in the proceeding." (See also Matter of Guardianship of Q.G.M. (Okla. 1991) 808 P.2d 684.) We assume from the absence of such language in 25 United States Code section 1914, that the Congress did not intend to preempt, in the case of appellate review, state law requiring timely notices of appeal from a parent who appeared in the underlying proceedings and who had knowledge of the applicability of the ICWA.
*191 In addition, were the mother's challenge an attack on the juvenile court's jurisdiction, then arguably her claim would be preserved despite her failure to challenge the juvenile court's action on appeal from its dispositional order. (In re Christian J. (1984) 155 Cal. App.3d 276, 279 [202 Cal. Rptr. 54], citing Abelleira v. District Court of Appeal (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715].) However, she does not contend the juvenile court lacked jurisdiction over the matter. In this regard, we note the ICWA does not divest state courts of jurisdiction over children of Indian descent living off the reservation. (In re Interest of C.W. (1992) 239 Neb. 817 [479 N.W.2d 105, 112], citing Kiowa Tribe of Oklahoma v. Lewis (10th Cir.1985) 777 F.2d 587; State ex rel. Juv. Dept. v. Charles (1984) 70 Or. App. 10, fn. 5 [688 P.2d 1354, 1360].)[5] In this case, of course, there had been no determination at the time of the 1992 dispositional order that Pedro and Margie were Indian children within the meaning of the ICWA.
Finding no merit in the mother's request that we overlook her delay, we conclude the mother is foreclosed from raising ICWA compliance issues in this appeal. In so doing, however, we have only addressed the rights of the mother and do not attempt to determine the rights of any tribe with regard to Pedro and Margie.

DISPOSITION
Judgment affirmed.
Martin, Acting P.J., and Harris, J., concurred.
A petition for a rehearing was denied June 20, 1995.
NOTES
[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[2] The mother does not raise any issue regarding notice to her (see 25 U.S.C. § 1912(a); 25 C.F.R. § 23.11(a) (1994)).

At the time these proceedings commenced, federal regulations mandated that notice include the following information if known: the child's name, birthdate and birthplace; the child's tribal affiliation; the parents' or Indian custodians' names, birthdate, birthplace, and the mother's maiden name; a copy of the petition or other document by which the proceeding was initiated; and a statement of the right of the biological parents, Indian custodians and the Indian tribe to intervene in the proceedings. (25 C.F.R. § 23.11, (a), (c) and (d)(1) (1994).)
[3] If an Indian child resides or is domiciled within an Indian reservation, the tribe shall have exclusive jurisdiction over any child custody proceeding. (25 U.S.C. § 1911(a).) If an Indian child does not reside upon or is not domiciled within a reservation, the state court shall transfer jurisdiction of the proceeding to the tribe in the absence of good cause to the contrary. (25 U.S.C. § 1911(b).) In any event, an Indian child's tribe has the right to intervene at any point in a state court dependency proceeding. (25 U.S.C. § 1911(c).) Here, neither Pedro nor Margie resided upon nor were domiciled within an Indian reservation.
[4] "Indian tribe" as used in the ICWA means any Indian tribe, band, nation, or other organized Indian group "recognized as eligible for the services provided to Indians by the Secretary [of the Interior] because of their status as Indians." (25 U.S.C. § 1903(8).)
[5] We recognize courts in at least two states may not not share this view. (See In Interest of J.W. (Iowa 1993) 498 N.W.2d 417, 419; In re N.A.H. (S.D. 1988) 418 N.W.2d 310, 311.) However, we are not persuaded by their reasoning.