Filed 4/29/14  In re Isaiah W. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ISAIAH W., A Person Coming Under the Juvenile Court Law. | B250231 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ASHLEE R.,<br><br>    Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK91018) |

APPEAL from orders of the Superior Court of Los Angeles County, Jacqueline H. Lewis, Judge.  Affirmed.

Patti L. Dikes, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Tracey F. Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Ashlee R. (mother) appeals from the order terminating her parental rights to the now two-year-old Isaiah W. She contends that the juvenile court erred in finding that the Indian Child Welfare Act (ICWA) did not apply here. We hold that mother failed to timely appeal the juvenile court's order and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In November 2011, Isaiah was born with a positive toxicology for marijuana and exhibited withdrawal symptoms. A petition was filed alleging that mother's and father's illicit drug use placed Isaiah at risk of harm.[1] At the detention hearing, the juvenile court removed Isaiah from his parents' care and ordered reunification services for them.

Mother told the juvenile court that she may have American Indian ancestry, and the court ordered the Department of Children and Family Services (Department) to investigate mother's claim. The Department interviewed maternal relatives and reported to the court that maternal grandfather may have had Blackfoot ancestry and maternal great-great-grandmother may have been part of a Cherokee tribe.

At the jurisdictional and dispositional hearing on January 20, 2012, the juvenile court reviewed the Department's report and concluded that there was no "reason to know" that Isaiah was "an Indian child as defined under ICWA." Accordingly, the court did not order that notice be provided to any tribe or the Bureau of Indian Affairs. Neither mother nor father objected or argued that the ICWA was applicable. The court

---

[1]  Father is not a party to this appeal.

2

adjudged Isaiah a dependent and ordered him placed in foster care. The parents were ordered to participate in counseling and drug testing.

Mother did not attend her scheduled drug tests or drug treatment program. Although she visited with Isaiah on a weekly basis, she never remained for the full two hours scheduled for the visits. Father only visited Isaiah two or three times. On September 12, 2012, the juvenile court terminated the parents' reunification services and set a hearing on the termination of parental rights.

On November 5, 2012, Isaiah was placed with a prospective adoptive family. On April 10, 2013, the juvenile court terminated mother's and father's parental rights. At the hearing, the court repeated its prior finding that there was no reason to know Isaiah was an Indian child. On June 5, 2013, mother appealed from the termination of parental rights.

*CONTENTIONS*

Mother contends the juvenile court erred in finding that it had no "reason to know" Isaiah was an Indian child, and in failing to order the Department to comply with the ICWA's notice requirements.

*DISCUSSION*

The ICWA "protect[s] the best interests of Indian children and [] promote[s] the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . . " (25 U.S.C. § 1902.) "In general, the ICWA applies to

3

any state court proceeding involving the foster care or adoptive placement of, or the termination of parental rights to, an Indian child. (25 U.S.C. §§ 1903(1), 1911(a)-(c), 1912-1921.)" (*In re Jonathon S.* (2005) 129 Cal.App.4th 334, 338.) An "Indian child" is defined as a child who is "either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).)

The ICWA provides that "where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary [of the Interior] in like manner . . . . No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary . . . . " (25 U.S.C. § 1912(a).)

Here, mother argues the court had "reason to know" that Isaiah was an "Indian child," and, thus, should have ordered the Department to comply with the ICWA's notice requirements. This argument relates to the court's dispositional order of January 2012. At that point, all of the information provided by mother and her relatives about their American Indian heritage was before the juvenile court, and the Department's report on its investigation into mother's heritage was considered by court.

4

Therefore, according to mother's argument, because the Department should have provided notice under the ICWA, it was error for the juvenile court to proceed with its disposition of removal and foster care placement. Instead, the court should have continued the dispositional hearing until at least ten days after the Department had served notice on the identified tribes or Secretary of the Interior. (See 25 U.S.C. § 1912(a).)

Mother had the right to appeal the juvenile court's order at the dispositional hearing. She did not do so, and only challenged the court's failure to provide notice under the ICWA approximately one and a half years later. However, the juvenile court's dispositional findings and orders had become final 60 days after the court's announcement of the order. (Cal. Rules of Court, rule 8.406(a)(1).) "Appellate jurisdiction to review an appealable order is dependent upon a timely notice of appeal. [Citation.]" (*In re Elizabeth G.* (1988) 205 Cal.App.3d 1327, 1331.) Here, by waiting until the termination of parental rights to object to the juvenile court's earlier finding that the ICWA did not apply, mother has forfeited her right to challenge this ruling. (*In re Pedro N.* (1995) 35 Cal.App.4th 183.)

Although cases such as *In re Marinna J.* (2001) 90 Cal.App.4th 731 and *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247 have disagreed with *Pedro N.*, we are not persuaded by their reasoning. Those cases held that "parental inaction" cannot "excuse the failure of the juvenile court to ensure that notice under the Act was provided to the Indian tribe named in the proceeding." (*In re Marinna J., supra,* 90 Cal.App.4th at p. 739; *Dwayne P., supra,* 103 Cal.App.4th at p. 261.)

5

However, we adopt *Pedro N.'s* conclusion that the ICWA does not authorize a parent to delay in challenging a trial court's determination on the applicability of ICWA until after the disputed decision is final. (*In re Pedro N., supra,* 35 Cal.App.4th at p. 190.)

In *Pedro N.*, the mother informed the juvenile court at the detention hearing for her two children that she was "a full-blooded member of the Mono Indian Tribe." (*In re Pedro N., supra,* 35 Cal.App.4th at p. 186.) The Department sent ICWA notice to the Bureau of Indian Affairs, and the Bureau responded that it needed the identity of the reservation or rancheria with which the mother was associated in order to confirm the family's tribal membership. (*Ibid.*) When county counsel raised this issue at the disposition hearing, the mother volunteered the name " 'North Fork.' " (*Id.* at p. 187.) However, there was no further discussion regarding ICWA notice and the juvenile court removed the children from the mother's care at the conclusion of the hearing. (*Ibid.*) After reunification efforts with the mother failed, the court terminated her parental rights. (*Id*. at p. 185.) The mother appealed from the order terminating her parental rights and argued that the Department had given inadequate notice under the ICWA. (*Ibid*.)

The *Pedro N.* court held that the mother was foreclosed from raising ICWA compliance issues because she did not raise this challenge until approximately two years after the juvenile court's decision not to proceed under the ICWA. (*Id*. at pp. 188-189.) The court also found that Congress did not indicate an intent to permit a parent "to allege an ICWA violation at any point in the proceedings." (*In re Pedro N., supra,* 35 Cal.App.4th at p. 190.) The court noted that the ICWA both authorizes a tribe to

6

intervene in a dependency action "at any point in the proceeding," and a parent of an Indian child to "petition any court of competent jurisdiction to invalidate" "any action for foster care placement or termination of parental rights." (25 U.S.C. §§ 1911(c) & 1914(a).) Accordingly, the *Pedro N.* court concluded that, "[h]ad the Congress intended to permit a parent to allege an ICWA violation *at any point in the proceedings*, it could well have so stated. . . . We assume from the absence of such language in [the provision authorizing a parent to raise ICWA violations], that the Congress did not intend to preempt, in the case of appellate review, state law requiring timely notices of appeal from a parent who appeared in the underlying proceedings and who had knowledge of the applicability of the ICWA." (*In re Pedro N., supra,* 35 Cal.App.4th at p. 190 [emphasis added.])

"Congress's intent to not cause unnecessary delay in dependency proceedings is evidenced by the [ICWA] provision allowing a hearing on [foster care placement or] the termination of parental rights within a relatively short time, 10 days, after the [Secretary of the Interior] or tribe receives ICWA notice. (25 U.S.C. § 1912(a).)" (*In re X.V.* (2005) 132 Cal.App.4th 794, 804.) Such an intent is supported by the maxim that "[b]ecause juvenile dependency proceedings 'involve the well-being of children, considerations such as permanency and stability are of paramount importance. (§ 366.26.)' [Citation.]" (*Ibid.*) Here, we do not believe Congress intended to authorize a parent to wait for over a year before challenging a trial court's decision on the applicability of the ICWA. Accordingly, we conclude that mother has forfeited her right to raise a challenge to the juvenile court's finding that the ICWA did not apply

here.  However, we note that, as in *Pedro N.,* we are only addressing the rights of mother, not the rights of a tribe under the ICWA or, for that matter, the rights of the child.  (*In re Pedro N., supra,* 35 Cal.App.4th at p. 191; see also 25 U.S.C. § 1902 [the ICWA protects the interests of Indian children, their families and Indian tribes].)

***DISPOSITION***

The orders of the juvenile court are affirmed.

***NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS***

KITCHING, J.

WE CONCUR:

KLEIN, P. J.

ALDRICH, J.