Filed 6/10/14  In re Jacob K. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re JACOB K., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JESSICA K.,<br><br>Defendant and Appellant. | F068498<br><br>(Super. Ct. No. 516418)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from orders of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Elaine Forrester, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel and Carrie M. Stephens, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Gomes, Acting P.J., Kane, J. and Poochigian, J.

Jessica K. (mother) appeals from the juvenile court's order terminating her parental rights to her 20-month-old son, Jacob K., under Welfare and Institutions Code section 366.26.[1]  Mother contends that the Stanislaus County Community Services Agency (agency) failed to obtain sufficient information to comply with the notice requirements of the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.).  We reject mother's contention and affirm the juvenile court's order.

### PROCEDURAL AND FACTUAL SUMMARY

In September 2012, the agency took newborn Jacob into protective custody after he and mother tested positive for methamphetamine and marijuana.  Mother and Jacob's father, Craig, have a history of methamphetamine use and homelessness, and mother failed to reunify with her two older children.  At the time of Jacob's birth, Craig was serving a jail sentence for narcotics possession.

The agency filed a dependency petition on Jacob's behalf and placed him in a foster home.

Mother and Craig appeared at the detention hearing and mother submitted the "Parental Notification of Indian Status" (ICWA-020), stating she may have Indian ancestry through the Cherokee tribe.  She did not, however, identify any known relatives or lineal ancestors claiming membership in the Cherokee tribe.  Craig also completed an ICWA-020 stating he did not have Indian ancestry.

The juvenile court ordered Jacob detained, ordered the agency to provide notice pursuant to the ICWA and set a combined jurisdictional/dispositional hearing (combined hearing).

On October 1, 2012, the agency mailed the "Notice of Child Custody Proceeding For Indian Child" (ICWA-030) to the Cherokee Nation of Oklahoma, United Keetoowah Band of Cherokee, Eastern Band of Cherokee Indians, the Department of the Interior and

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

the Bureau of Indian Affairs (BIA) by certified mail, return receipt requested. Social worker Tara Grubb completed the ICWA-030 and provided mother's name, address and birth date, as well as that of Jacob's maternal grandparents. In the spaces provided on the ICWA-030 for Jacob's maternal great-grandmother and great-grandfather, Grubb typed in "UNKNOWN." Grubb signed the ICWA-030, declaring under penalty of perjury that she had provided all the information she had about Jacob and his biological relatives. The ICWA-030 was received by all the recipients by October 12, 2012.

In November 2012, the juvenile court conducted a contested and combined hearing, adjudged Jacob its dependent and denied Craig reunification services. The court ordered services for mother and set a three-month interim review hearing in February 2013 and a six-month review hearing in May 2013.

In February 2013, at the three-month interim review hearing, the juvenile court inquired if the agency had received any replies to the ICWA notifications. County counsel stated the agency had not and asked the court to make an ICWA finding. The court found ICWA did not apply. It also admonished mother for not participating in drug treatment and confirmed the May hearing.

In its status review for the six-month review hearing, the agency recommended the juvenile court terminate mother's reunification services for noncompliance and implement a permanent plan of adoption.

In May 2013, the juvenile court convened the contested six-month review hearing and reiterated its finding that the ICWA did not apply. The court terminated mother's reunification services and set a section 366.26 hearing. The court advised mother of her right to seek appellate review by initiating extraordinary writ proceedings. Mother did not file a writ petition.

In November 2013, the juvenile court terminated mother and Craig's parental rights as to Jacob and approved a permanent plan of adoption. This appeal ensued.

3

Mother, for the first time, contends the juvenile court erred in finding the ICWA did not apply. She asserts the agency's notice was inadequate because it failed to include biographical data for Jacob's maternal great-grandparents and thus deprived the BIA and tribes a meaningful opportunity to determine if Jacob is an Indian child.

In *In re Pedro N.* (1995) 35 Cal.App.4th 183 (*Pedro N.*), we held that a parent who fails to timely challenge a juvenile court's ruling regarding the ICWA is foreclosed from challenging it in a subsequent appeal once the court's ruling is final. (*Id.* at pp. 189-190.) The juvenile court in this case found, at the interim review hearing in February 2013, that the ICWA did not apply. Mother did not appeal from the court's ICWA finding, which is now final.

Mother nevertheless contends she should be excused from her failure to appeal from the juvenile court's ICWA finding at the earliest opportunity because the juvenile court did not properly advise her of her right to appeal. It is true the juvenile court did not advise mother of her right to appeal at the interim hearing in February. However, the court reiterated its ICWA finding at the six-month review hearing in May 2013 and advised mother of her right to challenge its findings and orders by writ petition. She elected not to do so. Thus, mother forfeited the right to challenge the adequacy of the ICWA notice under *Pedro N.*

Notwithstanding forfeiture, we conclude mother has failed to demonstrate error. (*Calhoun v. Hildebrandt* (1964) 230 Cal.App.2d 70, 72 [it is appellant's burden to show affirmative error on the record].)

"The ICWA establishes minimum federal standards, both procedural and substantive, governing the removal of Indian children from their families." (*In re H.A.* (2002) 103 Cal.App.4th 1206, 1210 (*H.A.*).) To that end, it "seeks to protect the interests of Indian children and promotes the stability and security of Indian tribes and families." (*Ibid.*)

4

"Among the procedural safeguards included in the ICWA is a provision for notice, which states in part: 'In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.' (25 U.S.C. § 1912(a).)" (*In re D.T.* (2003) 113 Cal.App.4th 1449, 1453-1454 (*D.T.*).)

In *H.A.*, we specified what we expected the agency to do to satisfy the notice provisions of the ICWA and to provide a proper record for the juvenile court and appellate courts: the social services agency must send proper notice, return receipt requested, to the Indian tribe(s) in which the Indian child is enrolled or may be eligible for enrollment and provide the juvenile court a copy of the notice sent and the return receipt, as well as any correspondence received from the Indian entity relevant to the child's status. (*H.A.*, *supra*, 103 Cal.App.4th at pp. 1214-1215.) "In response to the notice requirements, the state Judicial Council has generated the notice forms used by the [agency] here: ICWA-030, entitled 'Notice of Child Custody Proceeding for Indian Child.'" (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1530 (*I.W.*).)

Notice under the ICWA must contain sufficient evidence to constitute meaningful notice. (*In re Karla C.* (2003) 113 Cal.App.4th 166, 175 (*Karla C.*).) "The federal regulations require the ICWA notice to include, *if known*, '(1) the name, birthplace, and birth date of the Indian child; (2) the name of the tribe in which the Indian child is enrolled or may be eligible for enrollment; (3) names and addresses of the child's parents, grandparents, great-grandparents and other identifying information; and (4) a copy of the dependency petition.' California courts enforce these requirements." (*I.W.*, *supra*, 180 Cal.App.4th at p. 1529, italics added.)

The juvenile court must determine whether proper notice was given under the ICWA and whether the ICWA applies to the proceedings. (*In re Asia L.* (2003) 107 Cal.App.4th 498, 506.) We review the juvenile court's findings for substantial evidence.

5

(See *Karla C., supra,* 113 Cal.App.4th at pp. 178-179.) Applying this standard of review, we reject mother's contention that proper notice was not given.

Mother informed the agency she may have Cherokee ancestry and provided biographical information about Jacob's maternal grandparents. Social worker Tara Grubb completed the ICWA-030, providing the information mother provided, the only information *known* by the agency. The agency's legal clerk certified that she mailed the ICWA-030 with a copy of the petition to the three Cherokee Indian tribes, the BIA and the Secretary of the Interior by certified mail, return receipt requested. The record contains the return receipts for all five addressees. As mother points out, the record does not contain any responses. However, tribal responses are not essential to a finding of adequate notice. The return receipt from the tribe is sufficient evidence the tribe received notice.

Mother nevertheless contends the notice was inadequate because the agency had information concerning Jacob's maternal great-grandparents that it should have pursued. She refers to information contained in a clinical assessment dated April 2013, reflecting that she lived with her maternal grandparents from the age of one year to approximately 11 years old and that she had a close relationship with them. Mother asserts the agency should have further questioned her about her maternal grandparents and provided their biographical information to the Cherokee tribes and the BIA.

Mother is correct to an extent. Under state law, both the juvenile court and the agency have an affirmative and continuing duty to inquire whether a child subject to dependency proceedings is an Indian child. (§ 224.3, subd. (a).) That duty includes making further inquiry regarding the possible Indian status of the child by interviewing extended family members. (§ 224.3, subd. (c).)

However, there is no evidence in this record as to what if any effort the agency made to ascertain the name and location of Jacob's great-grandparents. Further, mother makes no attempt to argue that further inquiry would have produced additional

6

information useful in determining Jacob's Indian status.  She does not, for example, claim that she could have provided her maternal grandparents' biographical information had the agency inquired.

Moreover, this case is not, as mother argues, like *D.T.*, *supra*, 113 Cal.App.4th 1449, in which the appellate court concluded the juvenile court failed to obtain sufficient information to comply with the ICWA and vacated its order terminating parental rights. (*D.T.* at pp. 1453, 1456.)  In *D.T.*, unlike this case, "the notices failed to include information *already known* to the social worker."  (*Id*. at p. 1455, italics added.)

In summary, we conclude, mother forfeited her appellate right under *Pedro N.* to challenge the juvenile court's compliance with the notice provisions of the ICWA.  We also conclude substantial evidence supports the juvenile court's finding that the ICWA notice was adequate.  The agency complied with our holding in *H.A.* by sending the ICWA-030 to the appropriate Indian authorities and tribes and including a copy of the ICWA-030 and return receipts in the juvenile court record.  In addition, the ICWA-030 contained all of the biographical data known to the agency.  We find no error.

## DISPOSITION

The order terminating mother's parental rights is affirmed.