Filed 8/8/14  Opn filed after rehearing

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ISAIAH W., A Person Coming Under the Juvenile Court Law. | B250231 |
| | (Los Angeles County Super. Ct. No. CK91018) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>ASHLEE R.,<br><br>        Defendant and Appellant. | |

        APPEAL from orders of the Superior Court of Los Angeles County, Jacqueline H. Lewis, Judge.  Affirmed.

        Patti L. Dikes, under appointment by the Court of Appeal, for Defendant and Appellant.

        Office of the County Counsel, John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Tracey F. Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Ashlee R. (mother) appeals from the order terminating her parental rights to the now two-year-old Isaiah W. She contends that the juvenile court erred in finding that the Indian Child Welfare Act (ICWA) did not apply. We hold that mother failed to timely appeal the juvenile court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2011, Isaiah was born with a positive toxicology for marijuana and exhibited withdrawal symptoms. The Department of Children and Family Services (Department) filed a petition alleging that mother's and father's illicit drug use placed Isaiah at risk of harm.[1] At the detention hearing, the juvenile court removed Isaiah from his parents' care and ordered reunification services for them.

Mother told the juvenile court that she may have American Indian ancestry, and the court ordered the Department to investigate mother's claim. The Department interviewed maternal relatives and reported to the court that maternal grandfather may have had Blackfoot ancestry and maternal great-great-grandmother may have been part of a Cherokee tribe.

At the jurisdictional and dispositional hearing on January 20, 2012, the juvenile court reviewed the Department's report and concluded that there was no "reason to know" that Isaiah was "an Indian child as defined under ICWA." Accordingly, the court did not order that the Department provide notice to any tribe or the Bureau of Indian Affairs. Neither mother nor father objected or argued that the ICWA was applicable. The court adjudged Isaiah a dependent and ordered him placed in foster care. The court ordered the parents to participate in counseling and drug testing. Mother did not appeal that order.

---

[1] Father is not a party to this appeal.

2

Mother did not attend her scheduled drug tests or drug treatment program. Although she visited with Isaiah on a weekly basis, she never remained for the full two hours scheduled for the visits. Father only visited Isaiah two or three times. On September 12, 2012, the juvenile court terminated the parents' reunification services and set a hearing on the termination of parental rights.

On November 5, 2012, the Department placed Isaiah with a prospective adoptive family. On April 10, 2013, the juvenile court terminated mother's and father's parental rights. At the hearing, the court repeated its prior finding that there was no reason to know Isaiah was an Indian child. On June 5, 2013, mother appealed from the termination of parental rights.

## CONTENTIONS

Mother contends the juvenile court erred in finding that it had no "reason to know" Isaiah was an Indian child, and in failing to order the Department to comply with the ICWA's notice requirements.

## DISCUSSION

The ICWA "protect[s] the best interests of Indian children and [] promote[s] the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . . " (25 U.S.C. § 1902.) "In general, the ICWA applies to any state court proceeding involving the foster care or adoptive placement of, or the termination of parental rights to, an Indian child. (25 U.S.C. §§ 1903(1), 1911(a)-(c), 1912-1921.)" (*In re Jonathon S.* (2005) 129 Cal.App.4th 334, 338.) An "Indian child" is defined as a child who is "either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).)

The ICWA provides that "where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.  If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary [of the Interior] in like manner . . . .  No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary . . . . "  (25 U.S.C. § 1912(a).)

Here, mother argues the court had "reason to know" that Isaiah was an "Indian child," and, thus, should have ordered the Department to comply with the ICWA's notice requirements.  This argument relates to the court's dispositional order of January 2012.  At that point, all of the information provided by mother and her relatives about their American Indian heritage was before the juvenile court, and the court considered the Department's report on its investigation into mother's heritage.  Therefore, according to mother's argument, because the Department should have provided notice under the ICWA, it was error for the juvenile court to proceed with its disposition of removal and foster care placement.  Instead, the court should have continued the dispositional hearing until at least ten days after the Department had served notice on the identified tribes or Secretary of the Interior.  (See 25 U.S.C. § 1912(a).)  We reject mother's argument.

Mother had the right to appeal the juvenile court's order at the dispositional hearing.  She did not do so, and only challenged the court's failure to provide notice under the ICWA approximately one and a half years later which was after the court terminated parental rights.  However, the juvenile court's dispositional findings and orders had become final 60 days after the court's announcement of the order.  (Cal. Rules of Court, rule 8.406(a)(1).)  "Appellate jurisdiction to review an appealable order is dependent upon a timely notice of appeal.  [Citation.]"  (*In re Elizabeth G.* (1988)

4

205 Cal.App.3d 1327, 1331.)  "An appeal from the most recent order entered in a dependency matter may not challenge prior orders for which the statutory time for filing an appeal has passed."  (*In re Pedro N.* (1995) 35 Cal.App.4th 183, 189.)  Here, because mother failed to timely appeal from the ICWA finding in the juvenile court's dispositional order, "she is foreclosed from raising the issue now on appeal from the order terminating her parental rights."  (*Ibid.*; see also *In re Elizabeth G,, supra,* 205 Cal.App.3d at p. 1331.)

Although cases such as *In re Marinna J.* (2001) 90 Cal.App.4th 731 and *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247 have disagreed with *Pedro N.*, we are not persuaded by their reasoning.  Those cases held that "parental inaction" cannot "excuse the failure of the juvenile court to ensure that notice under the Act was provided to the Indian tribe named in the proceeding."  (*In re Marinna J., supra,* 90 Cal.App.4th at p. 739; see also *Dwayne P., supra,* 103 Cal.App.4th at p. 261.)  We decline to adopt the implied conclusion in *Marinna J.* and *Dwayne P.* that there is no time limit on a parent's right to raise the issue of ICWA compliance.  To allow a parent unlimited time within which to raise this challenge would violate the child's constitutional right to a stable and permanent home.  (See *In re Jasmon O.* (1994) 8 Cal.4th 398, 421.)  Children have a constitutional interest in stability, *ibid.*, and in California, the courts have held that this includes the "right to a reasonably directed early life, unmarked by unnecessary and excessive shifts in custody . . . ."  (*In re Arturo A.* (1992) 8 Cal.App.4th 229, 241, fn.6.)  Accordingly, in the context of dependency proceedings, "where a child has formed familial bonds with a de facto family with whom the child was placed owing to a biological parent's unfitness [citation] . . . and where it is shown that the child would be harmed by any severance of those bonds, the child's constitutionally protected interests outweigh those of the biological parents."  (*In re Bridget R.* (1996) 41 Cal.App.4th 1483, 1506, superseded by statute on another ground as stated in *In re Santos Y.* (2001) 92 Cal.App.4th 1274, 1311-1312.)

In accordance with these principles, we adopt *Pedro N.'s* conclusion that the ICWA does not authorize a parent to delay in challenging a trial court's determination

on the applicability of ICWA until after the disputed decision is final.  (*In re Pedro N.,  supra,* 35 Cal.App.4th at p. 190.)  In *Pedro N.*, the mother informed the juvenile court at the detention hearing for her two children that she was "a full-blooded member of the Mono Indian Tribe."  (*In re Pedro N., supra,* 35 Cal.App.4th at p. 186.)  The Department sent ICWA notice to the Bureau of Indian Affairs, and the Bureau responded that it needed the identity of the reservation or rancheria with which the mother was associated in order to confirm the family's tribal membership.  (*Id.* at p. 187.)  When county counsel raised this issue at the disposition hearing, the mother volunteered the name " 'North Fork.' "  (*Ibid.*)  However, there was no further discussion regarding ICWA notice and the juvenile court removed the children from the mother's care at the conclusion of the hearing.  (*Ibid.*)  After reunification efforts with the mother failed, the court terminated her parental rights.  (*Id*. at p. 185.)  The mother appealed from the order terminating her parental rights and argued that the Department had given inadequate notice under the ICWA.  (*Ibid*.)

The *Pedro N.* court held that the mother was foreclosed from raising ICWA compliance issues because she did not raise this challenge until approximately two years after the juvenile court's decision not to proceed under the ICWA.  (*Id*. at p. 189.)  The court also found that Congress did not indicate an intent to permit a parent to delay in raising an ICWA violation until after the disputed action is final.  (*Id.* at p. 190.)  The court cited to an ICWA provision that "confers standing upon a parent claiming an ICWA violation to petition to invalidate a state court dependency action," and noted that this provision does not state that a parent may claim an ICWA violation at any point in the proceeding.  (*Ibid.* [citing to 25 U.S.C. § 1914].)  In fact, in another provision the ICWA does authorize a tribe to intervene in a dependency action "at any point in the proceeding."  (25 U.S.C. § 1911(c).)  Accordingly, the *Pedro N.* court concluded that, "We assume from the absence of such language in [the provision authorizing a parent to raise ICWA violations], that the Congress did not intend to preempt, in the case of appellate review, state law requiring timely notices of appeal from a parent who

6

appeared in the underlying proceedings and who had knowledge of the applicability of the ICWA." (*In re Pedro N., supra,* 35 Cal.App.4th at p. 190.)

"Congress's intent to not cause unnecessary delay in dependency proceedings is evidenced by the [ICWA] provision allowing a hearing on the termination of parental rights within a relatively short time, 10 days, after the [Secretary of the Interior] or tribe receives ICWA notice. (25 U.S.C. § 1912(a).)" (*In re X.V.* (2005) 132 Cal.App.4th 794, 804.) Such an intent is supported by the maxim that "[b]ecause juvenile dependency proceedings 'involve the well-being of children, considerations such as permanency and stability are of paramount importance. (§ 366.26.)' [Citation.]" (*Ibid.*)

In *X.V.*, the parents of a dependent child filed two appeals, each time challenging the Department's failure to provide adequate notice under ICWA. The court, on the first appeal, remanded the matter for the limited purpose of complying with ICWA notice requirements, and, on the second appeal, held that "the parents ha[d] forfeited a second appeal of ICWA notice issues." (*In re X.V., supra,* 132 Cal.App.4th at p. 804.) The court reasoned that, "[b]alancing the interests of Indian children and tribes under the ICWA, and the interests of dependent children to permanency and stability," there must be a limit to a parent's ability to "delay permanence for children" through "numerous belated ICWA notice appeals and writs." (*Id.* at pp. 804-805.)

The principles enunciated in *X.V.* support our conclusion that a dependent child's interest in permanency and stability requires that there be a time limit to a parent's right to raise the issue of ICWA compliance. In addition, we do not believe Congress intended to authorize a parent to wait for over a year before challenging a trial court's decision on the applicability of the ICWA. Accordingly, we conclude that mother has forfeited her right to raise a challenge to the juvenile court's finding that the ICWA did not apply here. However, we note that, as in *Pedro N.,* we are only addressing the rights of mother, not the rights of a tribe under the ICWA. (*In re Pedro N., supra,* 35 Cal.App.4th at p. 191; see also 25 U.S.C. § 1902 [the ICWA protects the interests of Indian children, their families and Indian tribes].)

7

## *DISPOSITION*

The orders of the juvenile court are affirmed.

**CERTIFIED FOR PUBLICATION**

KITCHING, J.

WE CONCUR:

KLEIN, P. J.

ALDRICH, J.

8