Filed 6/2/15  In re Makaila B. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re MAKAILA B. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>ROSEMARY B.,<br><br>  Defendant and Appellant. | F069961<br><br>(Super. Ct. Nos. 12CEJ300043-1, 12CEJ300043-2, 12CEJ300043-3)<br><br>**OPINION** |
| In re MAKAILA B. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>MICHAEL N.,<br><br>  Defendant and Appellant. | F070031 |

APPEAL from orders of the Superior Court of Fresno County.  Mary Dolas, Judge.

Lori A. Fields, under appointment by the Court of Appeal, for Defendant and Appellant Rosemary B.

Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant Michael N.

Daniel C. Cederborg, County Counsel, and Amy K. Cobb, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

Father Michael N. (case No. F070031) and mother Rosemary B.'s (case No. F069961)[1] sole argument on appeal is that the order terminating their parental rights pursuant to Welfare and Institutions Code section 366.26[2] must be conditionally reversed because of alleged Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) inquiry and notice errors. We affirm.

## STATEMENT OF THE CASE AND FACTS

A section 300 petition, filed on February 27, 2012, alleged that Makaila, age three, Michael, age 21 months, and Richard, age three months, were at risk of harm after their mother and father engaged in domestic violence (§ 300, subd. (b)) and mother was incarcerated (§ 300, subd. (g)). Mother and father had an extensive police history for domestic violence, and, in this instance, mother was arrested as the aggressor.

At the time the children were removed, father said he had possible Indian heritage, but in a form entitled, "Indian Child Welfare Act Inquiry Review," completed that same

---

[1]  On this court's own motion, the appeals in case Nos. F069961 and F070031 are hereby ordered consolidated under case No. F069961 and all documents shall be filed in that case.

[2]  All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

day, he stated neither he nor the children had any Indian ancestry.  The detention report stated that, in a previous referral, mother had stated she had no Native American heritage.

At the detention hearing on February 28, 2012, father was not present, but mother, who was, stated that she had possible Indian heritage.  She completed the form "Parental Notification of Indian Ancestry" (ICWA-020), and checked the box which stated she may have "Yaqui" ancestry.  She also checked the box that stated "[o]ne or more of my parents, grandparents, or other lineal ancestors is or was a member of a federally recognized tribe," although she did not state which ancestor or which tribe.

The jurisdiction report filed on March 20, 2012, stated that the department was currently gathering information from mother and father in order to complete the ICWA notices.  Father was not present at jurisdiction.  The allegation that mother was incarcerated was withdrawn; mother submitted on the report and disposition was set for April 2012.

At disposition on April 10, 2012, father appeared and denied Indian ancestry in court and on form ICWA-020.  The hearing was continued at the request of the department to account for a still outstanding ICWA response.

On May 22, 2012, the department filed copies of the ICWA notice, which had been sent to the Pascua Yaqui tribe, the three federally recognized Cherokee tribes and the Bureau of Indian Affairs (BIA).  The notice included mother's current address; date and place of birth; mother's biological mother's date and place of birth, and date and place of death; and under "Tribe or band, and location" for both her and her mother stated "Pascua Yaqui Tribal Council, Yaqui, Continental U.S. Indian Tribes."  For mother's biological father it stated his name, place and date of birth, and "Not Indian."  For father it listed current address; date and place of birth; father's biological mother's date and place of birth; and under "Tribe or band, and location" for him and his mother stated "Eastern Band of Cherokee Indians, Cherokee, Continental U.S. Indian Tribes[;] Cherokee Nation, Cherokee, Continental U.S. Indian Tribes[;] United Keetoowah Band

of Cherokee, Cherokee, Continental U.S. Indian Tribes."[3]  For father's biological father it stated "No information available."  There was also "No information available" for either mother or father's grandparents on either side.

The department filed a response from the Pascua Yaqui tribe, dated April 12, 2012, stating the children were not eligible for membership "[b]ased upon the family information provided and the current enrollment records …."  The Cherokee Nation and the United Keetowah Band stated the same.  No response had been received as yet from the Eastern Band of Cherokee Indians.[4]  The BIA advised the department it was obliged to send notice directly to the tribes.

Also on May 22, 2012, the department filed a motion to declare ICWA inapplicable.  Both mother and father, through respective counsel, submitted on the motion.  The juvenile court found ICWA inapplicable.  Disposition was continued for a contested hearing.

At contested disposition on July 5, 2012, mother was present, but father was not. The children were found to be dependents of the court and removed from mother and father's custody.  Reunification services were ordered and a six-month review set for December 20, 2012.  Mother filed a notice of appeal from the July 5, 2012, disposition hearing.  According to mother, the appeal was assigned case number F065539 and dismissed on January 11, 2013.

At the six-month review on January 3, 2013, the juvenile court returned the children to mother with 90 days of family maintenance services.  The juvenile court

---

**3**     On appeal, father notes that, while he claimed Native American ancestry through the Cherokee tribe, he later stated he had no Indian ancestry, and therefore, notice to the Cherokee tribes are not addressed in this appeal.

**4**     The response from the Eastern Band of Cherokee Indians was received right after the hearing, and filed with the juvenile court in advance of the contested disposition hearing.  This tribe also reported the children were not Indian children through the tribe.

terminated services for father, who had been living out of state. Father had kept contact with the children via telephone. Review was set for April and June of 2013.

On March 7, 2013, a section 387 supplemental petition was filed alleging that father was at mother's house and had unsupervised contact with the children. Mother had not had stable housing, living at four different locations since the beginning of December 2012. The petition stated that the children had no known Indian ancestry.

The detention report stated that mother was excused from domestic violence classes for excessive absences shortly after the children were returned to her care. Mother had failed to take Richard, who was determined to be eligible for special services, to several appointments. According to father, he came to help mother with child care. In February of 2013, mother had called the social worker and asked if Richard could be placed in foster care because she was having trouble finding housing for all three of the children. Mother had been asked to leave emergency housing due to lack of cooperation. Although there was a smell of marijuana in the home at a surprise visit, mother refused to test. The detention report stated that the ICWA did not apply.

At jurisdiction/disposition on April 9, 2013, mother was present, but not father. Mother submitted on the jurisdiction/disposition report which stated that the ICWA did not apply. Reunification services for mother were reinstated. The juvenile court found that the children did not come within the provisions of the ICWA. The other previously scheduled hearings were vacated and an 18-month review set for August 2013.

By the time of the 18-month review, mother had still not progressed in services and visits were still supervised. She had a positive drug test and her participation in residential treatment was minimal. Despite stating that she would keep the minors from unauthorized contact with father, mother continued to minimize the nature of her relationship with father.

At the October 17, 2013, review hearing, the juvenile court found it could not find significant progress for mother and there was still a substantial risk of detriment to the

5.

children. Reunification services were terminated and a section 366.26 permanent planning hearing set for February 13, 2014. Writ rights were mailed to father. Mother filed a notice of intent to file writ petition.

Prior to the October 2013 review hearing, father's counsel had filed a JV-180 section 388 modification petition requesting reunification services. The petition stated that father had been enrolled in domestic violence classes since June of 2013 and attended parenting classes since August of 2013.

At the contested section 388 hearing eventually heard on November 7, 2013, father was not present. However, father filed a declaration stating he could not be present as he was out of state, but that he had attended all but one domestic violence class, completed parenting classes and was employed. The juvenile court denied the motion, finding insufficient change of circumstance and insufficient evidence that the best interests of the children would be served.

Father appeared at the initial section 366.26 hearing February 13, 2014, stating he had finished services. The hearing was continued for further assessment of the permanent plan, as maternal relatives were denied placement and the current care providers only wished to adopt the youngest child.

By the time the section 366.26 report was filed on May 14, 2014, the children were in a new placement and adjusting well. According to the report, all three children were found to be generally adoptable, as well as specifically adoptable, as they were in a home willing to provide permanency.

On August 7, 2014, after testimony from mother, father, and Makaila, the juvenile court terminated mother and father's parental rights, finding that neither had met the burden of proving that a beneficial bond existed and that continuation would outweigh the benefits of adoption. Mother and father both appealed from that order.

DISCUSSION

Mother and father argue that the juvenile court and department failed to comply with the inquiry and notice requirements of the ICWA, requiring conditional reversal of the order terminating parental rights.  Mother and father contend that the 2012 notice sent by the department to the various tribes and BIA was inadequate.  In their view, although the department provided information it received, it failed to solicit or include any information about mother's grandparents (children's maternal great-grandparents), who mother identified as being members of a tribe.  Mother and father also contend the juvenile court erred in failing to inquire on the applicability of the ICWA at the time the supplemental section 387 petition was filed in 2013.  Respondent contends the juvenile court's rulings concerning ICWA have long been final and mother and father cannot complain at this late state that ICWA has been violated.  We agree with respondent and reject mother and father's contentions as untimely.  We also reject mother and father's further request that we overrule our opinion in *In re Pedro N.* (1995) 35 Cal.App.4th 183, 189 (*Pedro N.*).

In *Pedro N., supra,* 35 Cal.App.4th at pages 185 and 189, we held that a parent who fails to timely challenge a juvenile court's action regarding ICWA is foreclosed from raising ICWA notice issues in a subsequent appeal once the court's ruling is final.  The proper time to raise such issues is after the disposition hearing.  The juvenile court's rulings and findings at the disposition hearing are appealable upon a timely notice of appeal.  We noted in *Pedro N.* that the parent there was represented by counsel and failed to appeal the juvenile court's orders from the disposition hearing.  (*Pedro N., supra,* at pp. 189-190.)

Here, after the petition was filed, mother and father were questioned about possible Indian heritage; necessary forms were completed; the applicable tribes and the BIA were notified; responses from the tribes and BIA were received; and the juvenile court held a disposition hearing on May 22, 2012, specifically for the purpose of

determining whether the ICWA applied.  At the hearing, both mother and father submitted on the department's motion to find the ICWA inapplicable.  The juvenile court granted the motion.  Final disposition then took place on July 5, 2012.  Mother was present at both the May 22 and continued July 5, 2012, disposition hearings; father was not, although he was represented by counsel.  Both received notice of their right to appellate review with this court at that time.  Although the proceedings leading up to and including the juvenile court's disposition were appealable (*In re Eli F.* (1989) 212 Cal.App.3d 228, 233; § 395), mother and father did not raise the question of the adequacy of ICWA notice until they filed their appeals from the ruling in the section 366.26 hearing on August 7, 2014, more than two years later.

Appellate jurisdiction to review an appealable order depends upon a timely notice of appeal.  (*In re Elizabeth G.* (1988) 205 Cal.App.3d 1327, 1331.)  An appeal from the most recent order entered in a dependency matter may not challenge prior orders for which the statutory time for filing an appeal has passed.  (*In re Elizabeth M.* (1991) 232 Cal.App.3d 553, 563, abrogated on other grounds in *In re Tabitha W.* (2006) 143 Cal.App.4th 811, 817.)  The juvenile court's dispositional findings and orders on May 22, 2012, and July 5, 2012, are final and no longer subject to attack by mother and father. (*Pedro N., supra,* 35 Cal.App.4th at pp. 185, 189-191.)  We therefore do not reach their contention concerning the adequacy of the ICWA notice.

Mother and father also appear to argue that the juvenile court erred at the subsequent section 387 detention hearing on March 8, 2013, when it failed to readdress the ICWA issue because "there is no indication from the clerk's minute order that any additional inquiry or mention was made of the ICWA."  We reject their claim.  Because the juvenile court had previously determined that ICWA did not apply, a duty to make further inquiry would be triggered only if the court or the department had new information that the children are or may be Indian children.  (Cal. Rules of Court, rule 5.481(a)(4).)  In the absence of any indication from either mother or father of newly

discovered information that the children did indeed have Indian ancestry, no further inquiry was required. Here, neither mother nor father profess to have such information and, in fact, ignore their consent to the juvenile court's dispositional finding again, this time on the section 387 petition, that the ICWA did not apply. The detention report on the section 387 petition specifically stated that the ICWA did not apply. Further, the jurisdiction/disposition report, on which mother submitted, also noted that the ICWA did not apply. Thus, again, the time for mother and father to raise the ICWA compliance issue has passed.

Finally, mother and father ask that we overrule *Pedro N.* citing other decisions, such as *In re Nikki R.* (2003) 106 Cal.App.4th 844 and *In re Marinna J.* (2001) 90 Cal.App.4th 731, which disagree with *Pedro N.* These cases, and others, rely on the theory that *Pedro N.* is inconsistent with the protections ICWA affords to the interests of Indian tribes. We are not persuaded by these other authorities because our decision in *Pedro N.* does not foreclose a tribe's rights under ICWA due to a parent's appellate waiver. (*Pedro N., supra,* 35 Cal.App.4th at p. 185; see also *In re Desiree F.* (2000) 83 Cal.App.4th 460, 464 [we reversed denial of tribe's motion to intervene after final order terminating parental rights and invalidated actions dating back to outset of dependency and taken in violation of the ICWA].) In so ruling, we held we were addressing only the rights of the parent to a heightened evidentiary standard for removal and termination, not those of the tribe (*Pedro N., supra,* at p. 191), or, for that matter, the rights of the child. As a result, we conclude mother and father have forfeited their personal right to complain of any ICWA violation and decline their invitation to revisit our holding in *Pedro N.*

Mother and father had opportunity to challenge the juvenile court's findings concerning ICWA, but waited until now to object and their silence has waived their right to complain.

**DISPOSITION**

The orders are affirmed.

_____

FRANSON, J.

WE CONCUR:

_____

LEVY, Acting P.J.

_____

DETJEN, J.

10.