Filed 11/12/15  In re Shelby S. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re SHELBY S., et al., Persons Coming Under the Juvenile Court Law. | |
| TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KENNY S.,<br><br>Defendant and Appellant. | F071484<br><br>(Super. Ct. Nos. JJV055046E, JJV055046F)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Michael B. Sheltzer, Judge.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Kathleen Bales-Lange, County Counsel, and John A. Rozum, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Levy, Acting P.J., Kane, J. and Franson, J.

Kenny S. (father) appeals from the juvenile court's order terminating his parental rights to his daughters, five-year-old Shelby S. and nearly four-year-old D.S. (collectively the girls). Father's sole contention is that this order must be conditionally reversed because the juvenile court and the Tulare County Health and Human Services Agency (Agency) failed to comply with their duty of inquiry under the Indian Child Welfare Act (ICWA; 25 U.S.C.A. § 1901 et seq.). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We confine our summary of the record primarily to the issue of ICWA compliance. The case began in December 2013 with the filing of a Welfare and Institutions Code section 300 petition,[1] which alleged that the girls, then aged three and two, were at risk of harm due to their mother's and father's untreated mental health issues (§ 300, subd. (b)); father, a Penal Code section 290 registered sex offender, had been sexually abusing the girls, and mother had been sexually abusing D.S., and neither parent protected the girls from the other parent's abuse (§ 300, subd. (d)); and mother had neglected her four older children, who were the subjects of prior dependency cases (§ 300, subd. (j)).

The detention report stated that on the day the girls were taken into protective custody, father refused to sign any forms indicating Native American ancestry, or any other detention paperwork, until he talked with a lawyer, and said he would fill out the forms at the detention hearing. The social worker spoke with mother who at first said she did not have any Native American ancestry, but then said she thought her mother might, although she was unsure. Mother did not believe that father had any Native American ancestry. The social worker concluded that the ICWA did not apply.

At the December 2013 detention hearing, the juvenile court asked mother and father whether they believed they had American Indian heritage. Mother answered "No,"

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2.

but father answered "Yes." The juvenile court asked father if he was registered as Native American; father responded that members of his family were. When the court asked which tribe, father answered: "My mother has most of the information, but she can't –" The juvenile court apparently cut father off and asked him if he had been raised in a tribal household. Father answered "no," but said his father may have been raised in one; father did not know when "they" moved from Oklahoma to California. The juvenile court explained in open court that at that time, there was insufficient reason to believe the girls are or may be children covered by ICWA, but due to a claim of remote Indian ancestry, and to assist the Agency in providing complete information to the appropriate tribe for a determination of whether the girls are or may be Indian children, each parent was ordered to provide the Agency, within five days of the hearing, all family records regarding Indian ancestry, and the names, addresses and telephone numbers of any relative who may have information concerning the claim of Indian ancestry. The paternal grandmother, Dorothy M. (Dorothy), was present at the hearing.[2]

The jurisdiction report filed on January 29, 2014,[3] stated that father had not provided the Agency with any additional information concerning relatives who might know about the family's tribal membership despite the juvenile court's order requiring him to do so. The social worker had unsuccessfully tried to reach father by telephone on several occasions to ask him about this. On January 9, the social worker tried to reach father to schedule an appointment to discuss the case, but mother said he was at work; she agreed to give father the message to contact the social worker as soon as possible. When the social worker spoke with mother at the Agency's office on January 10, mother agreed to have father contact the social worker on January 13 before he went to work. On January 13, father left a voicemail for the social worker, asking the social worker to

---

[2] In its reports, the Agency referred to the paternal grandmother as Dorothy S.

[3] All subsequent references to dates are to the year 2014, unless otherwise stated.

3.

contact his lawyer in order to obtain permission to talk with him. The social worker emailed father's attorney for permission to speak with father; father's attorney responded by email he would have father contact the social worker. On January 15, the social worker mailed father a letter asking him to contact her as soon as possible concerning the case, including his Native American heritage.

On January 23, the social worker contacted the girls' adult half-sister regarding the family's possible Indian heritage. The half-sister said she had heard that her paternal grandfather was affiliated with some tribe, but that tribe had never been confirmed; she did not believe the family had ever received any type of benefits from an Indian tribe. On January 23 and 24, the social worker attempted to contact Dorothy by telephone regarding possible Native American ancestry, but was unsuccessful. There was no further information provided during the pendency of the case regarding whether Dorothy ever responded, or whether further efforts were made to contact her or ask her about the family's Indian heritage.

On January 24, the Agency sent out ICWA-030 forms for each girl by certified mail to the Bureau of Indian Affairs (BIA) and Secretary of the Interior. The forms listed each girl's first and last name, and date of birth; mother's and father's names, addresses, and dates of birth; and Dorothy's first and last name. The girls' and parents' places of birth were listed as "unknown." Dorothy's address was left blank, and her birth date and birthplace listed as "unknown." No other relatives' names or other identifying information were included on the forms, which stated that information was "unknown." The notices did not reflect the juvenile court's finding of presumed father status.

Since father had not contacted the Agency, the Agency recommended the juvenile court continue to find there was insufficient evidence that the girls were covered under ICWA.

On February 3, the Agency filed an addendum report which stated it had received letters from the BIA as to each girl, which were attached to the report. The letters

4.

explained that the BIA does not determine tribal eligibility or maintain a comprehensive list of persons possessing Indian blood; instead, that kind of information must be obtained from the tribe itself, if tribal affiliation can be determined, and "[i]t is the responsibility of the person claiming Indian ancestry to establish tribal affiliation." The letters further explained that pursuant to ICWA, it was incumbent upon the Agency or court to notify the appropriate tribes directly of their right to intervene, so if additional information on tribal affiliation became available on the girls, the Agency was advised to notify the appropriate tribe directly of its right to intervene. The letters further stated that based on the information provided in the notice, the following action was taken: "The notice received contains insufficient or limited information to determine Tribal Affiliation (25 CFR 23.11(d)). When additional information becomes available, please forward the Notice to the appropriate Tribe(s)."

At the February 26 jurisdictional hearing, the juvenile court found all the petition's allegations true, except the allegation that father had a mental illness, after mother submitted on the reports and father pled no contest to the allegations against him. A contested dispositional hearing was scheduled. On April 16, however, the juvenile court allowed father to withdraw his no contest plea and continued the jurisdictional hearing as to father.

A contested jurisdictional hearing was held on May 7. After hearing witness testimony, the juvenile court sustained the allegations in the first amended petition filed on April 28, which were identical to the allegations the juvenile court previously found true. The juvenile court proceeded immediately to disposition and denied reunification services for both parents. Visitation was denied because it was found to be detrimental to the girls. No discussion was held on the record concerning the adequacy of the IWCA notice or the applicability of ICWA. The juvenile court adopted the findings and orders the social worker submitted, which included a finding that there was insufficient reason

5.

to believe that the girls are or may be Indian children covered by ICWA. This is the last ICWA finding in the record.

The juvenile court set a section 366.26 hearing. Although both parents were present at the hearing, the reporter's transcript of the hearing does not reflect that the juvenile court gave them oral writ advisements; instead, the reporter's transcript records that the juvenile court stated, "[f]or the record," that the parents were "being provided the writ advisements." According to the minute order of the hearing, the parents' "Notice of Necessity to Seek Writ Review forms[,]" including an "Info Sheet," and forms JV-820 and JV-825, were personally served on the parents in court and orally noticed by the Court.

The Agency submitted a report for the section 366.26 hearing, which recommended the girls remain dependents under a plan of adoption. The Agency stated that the juvenile court found ICWA did not apply on February 5. The girls were in good health and developmentally on track; they were attending individual therapy which started about six months earlier. An adoptions assessment found the girls to be adoptable. The adult half-sister who was caring for the girls, however, had become overwhelmed with their needs and unable to provide them with a permanent home. Accordingly, the Agency recommended the section 366.26 hearing be continued so an adoptive home could be found.

At the contested section 366.26 hearing on September 17, father testified about how he took care of the girls before they were detained and that they were bonded to him. Father believed it would be detrimental to the girls if parental rights were terminated. The juvenile court found that termination of parental rights would not be detrimental to the girls, who had a probability for adoption but were difficult to place because of membership in a sibling group, identified adoption as the permanent plan, and continued the hearing without terminating parental rights because an adoptive home had not been found.

6.

In a report prepared for the continued section 366.26 hearing, the Agency stated the girls were placed in an adoptive home on November 7. The girls had progressed in therapy and were doing well. The Agency recommended termination of parental rights so the girls could be freed for adoption by their current caregivers.

At the April 17, 2015 section 366.26 hearing, father asked to testify again. His attorney stated that father would testify he believed it would be detrimental to the girls to terminate the parental relationship, they were strongly bonded to him, and even though he had not had contact with the girls, he loved them. The juvenile court denied the request, stating that it had already heard that evidence, and the offer of proof was not new evidence. The juvenile court adopted the social worker's findings and orders, which included orders terminating parental rights and identifying adoption as the permanent plan.

## DISCUSSION

Father does not challenge the order terminating his parental rights. Instead, he challenges the juvenile court's finding, made at the May 7, 2014 dispositional hearing, that there was an insufficient reason to believe the girls are or may be Indian children under ICWA. Father contends the juvenile court and the Agency did not make an adequate inquiry regarding his claimed Indian heritage, because the record does not show that the Agency ever asked Dorothy about the family's Indian heritage or that they asked the half-sister the names of the paternal grandfather or great-grandfather, and the ICWA notices sent to the BIA were inadequate. Citing this court's decision in *In re Pedro N.* (1995) 35 Cal.App.4th 183 (*Pedro N.*), the Agency contends the juvenile court's rulings concerning ICWA have long been final, and father cannot complain at this late stage that ICWA has been violated. We agree with the Agency and reject father's contentions as untimely.

In *Pedro N.*, *supra*, at pages 185 and 189, we held that a parent who fails to timely challenge a juvenile court's action regarding ICWA is foreclosed from raising ICWA

7.

notice issues in a subsequent appeal once the court's ruling is final. Instead, the proper time to raise such issues is after the dispositional hearing, when the juvenile court's rulings and findings may be reviewed on appeal. We noted in *Pedro N.* that the parent there was represented by counsel and failed to appeal the juvenile court's orders from the dispositional hearing. (*Pedro N.*, *supra*, at pp. 189-190.)

Here, the juvenile court's ICWA finding was made at the dispositional hearing, at which a section 366.26 hearing was set. Although, as father points out, the reporter's transcript of that hearing does not show that the juvenile court orally advised father of his right to seek writ review of the rulings and findings made at that hearing, the reporter's and clerk's transcripts show that father was personally served at the hearing with a JV-820 "Notice of Intent to File Writ Petition" form, and a JV-825 "Petition for Extraordinary Writ" form. Father, however, did not seek appellate review of the disposition findings and orders by filing a petition for extraordinary writ or appeal. He also did not appeal the findings made at the first section 366.26 hearing. Father was represented by counsel throughout these proceedings, but neither lodged any objections to the juvenile court's finding that there was insufficient reason to find that the girls are or may be Indian children under ICWA, or complain that notice was defective. Instead, father waited to challenge the adequacy of the juvenile court or Agency's inquiry, and of the notice to the BIA, until he filed his appeal from the ruling at the section 366.26 hearing on April 17, 2015, terminating his parental rights.

The juvenile court's dispositional findings and order on May 7, 2014, are final and no longer subject to attack by father. (*Pedro N.*, *supra*, 35 Cal.App.4th at pp. 185, 189-191.) Our holding in *Pedro N.* is fully applicable here. Father waited until now to object and his prior silence has forfeited his right to complain on appeal.

We reject father's contention that we should not apply *Pedro N.* because the reporter's transcript does not show that he was orally advised at the dispositional hearing

of his right to seek writ review as required by section 366.26, subdivision (*l*)(3).[4] His reliance on *Maggie S. v. Superior Court* (2013) 220 Cal.App.4th 662 (*Maggie S.*), is misplaced. There, the appellate court excused the mother's lack of compliance with the writ requirement and construed her purported appeal as a petition for extraordinary writ because, although the mother was present when the section 366.26 hearing was set, she was not orally advised of the writ requirement and instead the forms were mailed to her at the prison. (*Maggie S.*, *supra*, 220 Cal.App.4th at p. 671.)

In contrast here, although father was present when the juvenile court set the section 366.26 hearing, he apparently did not attempt to appeal the setting order, and instead is appealing from subsequent orders following the section 366.26 hearing. Thus, "we are not in the procedural posture to treat a timely appeal from an order setting a section 366.26 hearing as a cognizable appeal or as a writ petition. (Cf. *In re Merrick V.* (2004) 122 Cal.App.4th 235, 247–249 [appellate court reviewed mother's claims on appeal from setting order because court failed to orally provide her with notice of the writ requirement]; *Jennifer T. v. Superior Court* (2007) 159 Cal.App.4th 254, 260 (*Jennifer T.*) [where juvenile court failed to orally advise mother of her writ rights, appellate court construed purported appeal from order setting § 366.26 hearing as a standard petition for writ of mandate 'without regard to the shortened period for writ

---

[4] Section 366.26, subdivision (*l*)(3) provides in pertinent part: "'The Judicial Council shall adopt rules of court, effective January 1, 1995, to ensure all of the following: [¶] (A) A trial court, after issuance of an order directing a hearing pursuant to this section be held, shall advise all parties of the requirement of filing a petition for extraordinary writ review as set forth in this subdivision in order to preserve any right to appeal in these issues. *This notice shall be made orally to a party if the party is present at the time of the making of the order* or by first-class mail by the clerk of the court to the last known address of *a party not present* at the time of the making of the order." (Italics added.)

review that would otherwise be applicable ([California Rules of Court,] [r]ules 8.450, 8.452.)'].)" (*In re A.H.* (2013) 218 Cal.App.4th 337, 350, fn. omitted.)

Father asserts that because he was not given an oral advisement and the juvenile court did not make an oral ICWA finding, it was unlikely he knew he needed to file a writ within seven days to challenge the written ICWA finding. But father was personally served with the writ advisements at the hearing. In our view, the appellate record does not demonstrate that father's failure to comply with the writ requirement should be excused for exceptional circumstances constituting good cause. (Cf. *In re Cathina W.* (1998) 68 Cal.App.4th 716, 722-723 [mother entitled to review of order setting the section 366.26 hearing on appeal from the subsequent order terminating her parental rights because she was not duly advised of the writ requirement; mother was not personally present at the setting hearing, notice was mailed to mother four days after entry of the setting order to her last known address, the notice was returned to the clerk's office stamped "return to sender" along with a label that contained mother's new address, and the clerk did not re-mail the notice to that address].)

To the extent father relies on cases such as *In re Marinna J.* (2001) 90 Cal.App.4th 731, 737–739 and *In re B.R.* (2009) 176 Cal.App.4th 773, 779, which disagreed with *Pedro N.* on the theory that decision is inconsistent with the protection and procedures afforded by ICWA to the interest of Indian tribes, we are not persuaded and decline to revisit our holding.[5]

Finally, we note that a parent's forfeiture of an ICWA notice issue under *Pedro N.* does not foreclose a tribe's rights under ICWA. (*Pedro N., supra,* 35 Cal.App.4th at pp.

---

[5] The issue of whether a parent's failure to appeal a juvenile court's finding that notice under ICWA was unnecessary precludes the parent from subsequently challenging that finding on a subsequent appeal from an order terminating parental rights is currently pending before the California Supreme Court in *In re Isaiah W.* (2014) 288 Cal.App.4th 981, review granted October 29, 2014, S221263.

185, 189–190; see *In re Desiree F.* (2000) 83 Cal.App.4th 460, 477–478 [wherein we reversed the juvenile court's denial of a tribe's motion to intervene after a final order terminating parental rights and invalidated actions dating back to outset of dependency that were taken in violation of ICWA].)  As we explained in *Pedro N.,* we were addressing only the parent's rights to a heightened evidentiary standard for removal and termination, not the tribe's rights (*Pedro N., supra,* 35 Cal.App.4th at p. 191), or, for that matter, the child's rights.  As a result, we conclude father has forfeited his personal right to complain of any alleged defect in compliance with the ICWA.

## DISPOSITION

The juvenile court's order terminating father's parental rights is affirmed.