Filed 12/15/15  In re E.M. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| In re E.M. et al., Persons Coming Under the Juvenile Court Law. | |
| KINGS COUNTY HUMAN SERVICES AGENCY, | F071245 |
| Plaintiff and Respondent, | (Super. Ct. No. 13JD0090) |
| v. | |
| PATRICK M., | **OPINION** |
| Defendant and Appellant. | |
| In re E.M. et al., Persons Coming Under the Juvenile Court Law. | |
| KINGS COUNTY HUMAN SERVICES AGENCY, | F071393 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 13JD0090) |
| E.S., | |
| Defendant and Appellant. | |

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Kings County.  Jennifer Lee Giuliani, Judge.

---

[*]    Before Gomes, Acting P.J., Kane, J. and Franson, J.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant Patrick M.

Mara Carman, under appointment by the Court of Appeal, for Defendant and Appellant E.S.

Kathleen Bales-Lange, County Counsel, John A. Rozum, Chief Deputy County Counsel, and Abel C. Martinez, Deputy County Counsel, for Plaintiff and Respondent.[1]

-ooOoo-

Appellants Patrick M. (father) and E.S. (mother) appeal from a juvenile court judgment terminating their parental rights and selecting adoption as the permanent plan (Welf. & Inst. Code, § 366.26)[2] concerning their seven-year-old son, Eli, and four-year-old son, Ian.[3]  They contend the juvenile court erred in not applying the exception to adoption set forth in section 366.26, subdivision (c)(1)(B)(v), the "sibling relationship" exception.  They also contend the juvenile court and the Kings County Human Services Agency (agency) failed to comply with their duty of inquiry under the Indian Child Welfare Act (ICWA; 25 U.S.C.A. § 1901 et seq.).  We affirm.

## PROCEDURAL AND FACTUAL SUMMARY

In December 2013, Hanford Police were dispatched to a motel to investigate a report father was having sex with two juvenile females and providing them methamphetamine.  Father was the maintenance man at the motel.  He and mother, their two children, Eli and Ian, then five and two years old respectively, and father's teenage children, then 16-year-old Chelsea and 13-year-old Patrick, resided in one of the motel

---

[1]    While this case arose and remains in Kings County Juvenile Court, the Kings County Human Services Agency and County Counsel's Office declared a conflict of interest.  Tulare County Health and Human Services Agency and County Counsel's Office took over the case as a courtesy.

[2]    All statutory references are to the Welfare and Institutions Code.

[3]    Father and mother each join the arguments raised by the other.  On our own motion, we consolidate their appeals.

2.

rooms (hereafter "the family residence"). Two of Chelsea's female friends, Y.P. and J.B., both 16, also stayed in the family residence on a regular basis. Father sometimes rented a second motel room (hereafter "the extra room").

The officers executed search warrants of the family residence and the extra room. They found mother, the four children and Y.P. in the family residence along with stolen property. They also found letters in which father and mother discussed engaging in sexual activity with Y.P. and J.B. In the extra room, the police found father standing at the foot of a bed on which J.B. was lying. They also found methamphetamine on the bedside table and a pornographic video of a young girl engaged in a sexual act with a male subject playing on a cell phone. Father, mother and J.B. tested positive for methamphetamine. Father and mother were arrested and J.B. was transported to the hospital for treatment.

The agency took Chelsea, Patrick, Eli and Ian into protective custody. All four children were initially placed together in a foster home in Tulare County. However, the foster family could not accommodate all four and asked that they be removed. In January 2014, Eli and Ian were separated from Chelsea and Patrick and placed in a different foster home. Until their removal in December 2013, the children had been raised together.

A social worker inquired of father and mother if they had any Native American ancestry. Mother said that she did through her father, Harold S. Harold told the social worker he was in the process of registering with the Choctaw Tribe.

In late December 2013, the juvenile court ordered the children detained pursuant to a dependency petition filed by the agency. Harold and the maternal grandmother, Dawn, appeared at the hearing. No one asked Harold for any personal information about himself or his Native American ancestry.

On January 3, 2014, the agency sent notice to the Choctaw Nation of Oklahoma (the "Choctaw Nation"), the Jena Band of Choctaw Indians (the "Jena Band") and the Mississippi Band of Choctaw Indians (the "Mississippi Band") that child custody

proceedings had been initiated with respect to Eli and Ian. In the section of the ICWA-030 form (Notice of Child Custody Proceeding for Indian Child) reserved for information regarding the maternal grandfather, the agency provided Harold's first and last name and identified "Choctaw" as the tribe to which he may be a member.

At hearings in January and February 2014, the juvenile court adjudged all four children dependents, ordered reunification services for father as to all four and for mother as to Eli and Ian. The court found that ICWA may apply and set an ICWA review hearing for March 2014. The court set the six-month review hearing for August 2014.

By the end of January 2014, the agency had received responses from the Choctaw Nation and Mississippi Band stating that Eli and Ian were not eligible for tribal membership. On February 18, 2014, the agency sent a second notification to the Jena Band, again providing only Harold's name and identifying "Choctaw" as his tribe. The Jena Band did not respond.

On March 18, 2014, the juvenile court found ICWA did not apply. In addition, the agency and the County Counsel's Office declared a conflict of interest and the Tulare County Health and Human Services Agency (hereafter "the agency") and County Counsel's Office took over the case as a courtesy agreement between the counties.

The juvenile court continued the six-month review hearing and conducted it in October 2014. Father and mother remained incarcerated the entire time with no release date and were limited in their ability to participate in services. Eli and Ian were transported weekly with Chelsea and Patrick to the county jail to visit them. In August 2014, Eli and Ian began visiting Chelsea and Patrick weekly apart from their visits with their parents.

In October 2014, the juvenile court terminated father and mother's reunification services and set a section 366.26 hearing. Father and mother challenged the setting order by extraordinary writ petition (Cal. Rules of Court, rules 8.450-8.452), which we denied. (*Patrick M. v. Superior Court* (Jan. 30, 2015, F070624, F070625 [nonpub. opn.].) In

4.

their petition, they argued the juvenile court erred in finding they were provided reasonable reunification services.

In November 2014, Eli and Ian were placed with Dawn's (their maternal grandmother) sister and her husband in Los Angeles.

In its report for the section 366.26 hearing, the agency recommended the juvenile court find Eli and Ian to be adoptable and free them to be adopted by their foster parents. Eli and Ian had been placed with their foster parents since November of 2014 and the parents wanted to adopt them and raise them as their own. They also indicated they were open to telephone or Skype communication between the siblings if allowed.

The agency opined that Eli and Ian were not strongly bonded to Chelsea and Patrick, but that it would be in Eli and Ian's best interest to maintain a relationship with them.

In March 2015, the juvenile court conducted a contested section 366.26 hearing. Chelsea testified that she lived with Eli and Ian from Eli's birth until mother and father were arrested in December 2013. When she lived with them she cared for them like a big sister, playing with them, changing their diapers and taking them to the park. After the arrest, she rode along with Eli and Ian to visit father and mother in jail. When Eli and Ian saw her, they ran to her and hugged her. Chelsea had not seen Eli and Ian since January of 2015. She was afraid if they were adopted she would lose all contact with them. She did not want Eli and Ian to be adopted unless mother and father did not change.

Patrick testified he lived with Eli and Ian until the arrest. When he lived with them, he played with them. He regarded them as his brothers and loved and missed them a lot. He said they also missed him a lot.

Dawn testified that she visited Eli and Ian at her sister's home and they were happier than they had been in foster care but they said they loved and missed their parents. She hoped that the court would choose legal guardianship over adoption for the children. She believed the children would be stable in either arrangement. She also

5.

believed her sister would facilitate a relationship between Eli and Ian and Chelsea and Patrick "to the best of everyone's ability." She said her sister had not refused any family member visitation.

Father and mother's attorneys argued that legal guardianship was preferable to adoption for Eli and Ian because it would provide them a secure placement without severing their relationship with their parents and siblings.

The juvenile court found that Eli and Ian were adoptable and none of the exceptions to adoption applied and terminated father and mother's parental rights.

In concluding that the sibling relationship exception did not apply, the juvenile court concluded that there would be some interference with the children's sibling relationship whether it chose adoption or guardianship as their permanent plan because of their physical distance and because arranging visits would be difficult. Further, the court could not find a substantial interference because the children continued to visit their siblings. In addition, the court concluded that the children's interest in permanency was outweighed by any interference that might result.

This appeal ensued.

## DISCUSSION

**ICWA Notice**

Father and mother (appellants) contend ICWA notice was defective because the agency failed to provide readily available information about Harold (i.e., date and place of birth and address) that may have established Eli and Ian as Indian children. Citing this court's decision in *In re Pedro N*. (1995) 35 Cal.App.4th 183 (*Pedro N.*), the agency contends the juvenile court's rulings concerning ICWA have long been final, and appellants cannot complain at this late stage that ICWA has been violated. We agree with the agency and reject appellants' contentions as untimely.

In *Pedro N., supra,* 35 Cal.App.4th at pages 185 and 189, we held that a parent who fails to timely challenge a juvenile court's action regarding ICWA is foreclosed

from raising ICWA notice issues in a subsequent appeal once the court's ruling is final. Instead, the proper time to raise such issues is after the dispositional hearing, when the juvenile court's rulings and findings may be reviewed on appeal. We noted in *Pedro N*. that the parent there was represented by counsel and failed to appeal the juvenile court's orders from the dispositional hearing. (*Id*. at pp. 189-190.)

Here, the juvenile court's ICWA finding was made on March 18, 2014. The alleged deficiency was evident on the face of the ICWA-030 notice form which was sent out multiple times. Appellants and their attorneys were served with the notice form but did not object to the juvenile court's ICWA finding or complain that notice was defective. Further, they did not timely challenge the juvenile court's ICWA finding by raising it on appeal. Consequently, the court's finding is now final and not subject to attack by appellants. (*Pedro N*., *supra*, 35 Cal.App.4th at pp. 185, 189-191.)

Additionally, it further bears noting that appellants did not seek appellate review of the ICWA finding in their extraordinary writ petition. That is not to suggest that we would have considered the issue preserved for review had they done so. However, it does speak to the extent of their delay in raising it. Indeed, they waited until they filed their appeals from the ruling at the section 366.26 hearing on March 3, 2015, terminating their parental rights.

We conclude appellants forfeited their right to appellate review of the juvenile court's ICWA finding.

**Sibling Relationship Exception to Adoption**

Appellants contend the juvenile court erred in not applying the sibling relationship exception to adoption (§ 366.26, subd. (c)(1)(B)(v)) given evidence that Eli and Ian were strongly bonded to Chelsea and Patrick and that Chelsea and Patrick were afraid of losing their relationship with their younger siblings. Under the circumstances, appellants argue, the juvenile court should have selected legal guardianship, rather than adoption, as the permanent plan. We disagree.

Once the juvenile court has terminated reunification services, its focus shifts to the children's need for permanency and stability. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) If, as here, the children are likely to be adopted, adoption is the preferred choice because it offers the child the best chance "'at [a full] emotional commitment from a responsible caretaker.' [Citation.] 'Guardianship, while a more stable placement than foster care, is not irrevocable and thus falls short of the secure and permanent future the Legislature had in mind for the dependent child.' [Citation.]" (*In re Celine R.* (2003) 31 Cal.4th 45, 53 (*Celine R.*).)

Thus, the juvenile court must order adoption and terminate parental rights, unless it finds that terminating parental rights would be detrimental to the child because one of the exceptions to adoption contained in section 366.26, subdivision (c)(1)(B) applies. The exception raised in this case, section 366.26, subdivision (c)(1)(B)(v), the "sibling relationship" exception, addresses the situation where termination of parental rights would substantially interfere with a child's sibling relationship, "taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(B)(v).)

Whether preservation of a sibling relationship outweighs the benefits of adoption requires a two-step determination. First, the parent must establish: (1) the existence of a significant sibling relationship; (2) that terminating parental rights would substantially interfere with that relationship; and (3) it would be detrimental to the child if the relationship ended. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 952.) If the parent meets his or her burden of proof, the juvenile court must then "balance the beneficial interest of the child in maintaining the sibling relationship … against the sense of security and

8.

belonging adoption and a new home would confer." (*Id*. at p. 951.) In evaluating detriment resulting from the severance of a sibling relationship, the juvenile court considers the detriment to the child and not to the child's siblings. (*Celine R*., *supra*, 31 Cal.4th at p. 54.)

When a juvenile court rejects a detriment claim and terminates parental rights, the appellate issue is not whether substantial evidence exists to support the court's rejection of the detriment claim but whether the juvenile court abused its discretion in so doing. (*In re Jasmine D*. (2000) 78 Cal.App.4th 1339, 1351.) For this to occur, the proof offered would have to be uncontradicted and unimpeached so that discretion could be exercised only in one way, compelling a finding in favor of the appellant as a matter of law. (*Roesch v. De Mota* (1944) 24 Cal.2d 563, 570-571; *In re I.W*. (2009) 180 Cal.App.4th 1517, 1528.) Based on our review of the record, we conclude the juvenile court properly exercised its discretion.

In this case, appellants failed to meet their burden of proving that terminating their parental rights would substantially interfere with Eli and Ian's relationship with Chelsea and Patrick. According to the evidence, the children's caretaker was amenable to maintaining sibling contact and Chelsea and Patrick had visited the children in Southern California. The caretaker was also willing to facilitate communication by telephone and Skype. Further, appellants presented no evidence that it would be detrimental to the children if their relationship with Chelsea and Patrick ended. The only evidence bearing on the detrimental effect of severing the sibling relationship was introduced through Chelsea and Patrick who testified it would negatively impact them. However, it is the detriment to the child subject to adoption *not* the sibling that the juvenile court must consider.

Appellants liken their case factually to *In re Naomi P*. (2005) 132 Cal.App.4th 808 (*Naomi P*.) in which the sibling relationship exception was found applicable and which, they argue, compels the same result here. We find *Naomi P*. wholly distinguishable.

9.

In *Naomi P.*, the juvenile court found that the sibling relationship exception applied and ordered legal guardianship for Naomi. In ruling, the court explained that it was struck by the siblings' testimony describing a "true sibling relationship." The court also doubted the caretaker's intention to preserve the sibling relationship. (*Naomi P.*, *supra*, 132 Cal.App.4th at p. 821.) The department appealed, arguing there was insufficient evidence to support application of the exception. The court of appeal affirmed, concluding substantial evidence supported the juvenile court's finding the exception applied. (*Id*. at p. 811.)

We find *Naomi P.* factually dissimilar with respect to the intent of the caretaker to preserve the sibling relationship. The juvenile court in *Naomi P*. did not believe the caretaker intended to do so. The juvenile court in this case did. Further, and more fundamentally, *Naomi P*. is procedurally distinguishable because it involves a different burden of proof and standard of review. In *Naomi P*., the mother bore the burden of proving the applicability of the sibling relationship and prevailed. The department appealed and the appellate court, applying the substantial evidence standard of review affirmed. Therefore, *Naomi P*. stands for the proposition that substantial evidence supported the juvenile court's finding as applied to the facts in that case. Here, appellants had the burden of proof, did not meet it, and appealed the juvenile court's rejection of their claim of detriment. As explained above, the standard of review in that case is *not* substantial evidence but abuse of discretion. Thus, *Naomi P*. is completely unavailing.

We conclude the juvenile court properly exercised its discretion in finding the sibling relationship exception did not apply and affirm its orders terminating appellants' parental rights.

## DISPOSITION

The juvenile court's orders are affirmed.