Filed 4/15/16  In re T.H. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re T.H., a Person Coming Under the Juvenile Court Law. | |
| TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>B.H.,<br><br>Defendant and Appellant. | F072594<br><br>(Super. Ct. No. JJV068484A)<br><br>**OPINION** |

-ooOoo-

### THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  Hugo J. Loza, Judge.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Kathleen Bales-Lange, County Counsel, John A. Rozum, Chief Deputy County Counsel, and Amy-Marie Costa, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

*Before Kane, Acting P.J., Detjen, J., and Smith, J.

## *INTRODUCTION*

At a Welfare and Institutions Code[1] section 366.26 hearing, the trial court adopted a plan of guardianship for T.H. with a maternal great-aunt, granted visitation to father, and dismissed the dependency. Father's sole issue on appeal is that the trial court failed to comply with the Indian Child Welfare Act (25 U.S.C. § 1901 et seq. (ICWA)) and that, therefore, the order must be reversed. We disagree and affirm.

## *FACTS AND PROCEDURAL HISTORY*

Father is the biological father of T.H. J.H., mother, is the mother of T.H. and T.H.'s two younger half-siblings, L.H. and G.H. The half-siblings have a different father and are not the subject of this appeal.

In 2013, mother and her male companion, Tommy, engaged in a violent altercation in front of the children. Mother has a history of mental health problems, including diagnoses of schizophrenia, Aspergers, depression, and bipolar disorder. A section 300 petition was filed on behalf of the children in March 2013 in Los Angeles County, but they were not adjudicated dependents of the juvenile court until May 27, 2014.

On March 19, 2013, father was found to be the biological parent of T.H. Father was represented by counsel. Father was incarcerated at the time, and the juvenile court in Los Angeles ordered that father "receive[] services as an incarcerated parent." The children were placed with a maternal great-aunt in Lancaster. The jurisdiction and disposition findings were not appealed.

The section 366.21 status review report stated the ICWA did not apply. The report recommended the case be transferred to Tulare County as mother and one of the other

---

[1]References to code sections are to the Welfare and Institutions Code unless otherwise specified.

2.

fathers resided in Tulare County. The children remained placed with the maternal great-aunt. The section 366.21 findings were not appealed.

The transfer-in report noted that mother had not seen her children since they were detained. On December 16, 2014, the Tulare County Superior Court appointed counsel for all parents, including father, who was not present. Father continued to be incarcerated in San Diego County. It was recommended that visits between father and T.H. would be detrimental as T.H. was now six years old and had never met father.

At the continued transfer-in hearing on January 8, 2015, it was noted that, "at one point mother had claimed in LA County that she had Indian heritage," and the Tulare County Health and Human Services, Child Welfare Services (hereafter department), needed to get more information on the claim of Indian heritage. Mother stated her grandmother told her that her mother was "Cherokee, something like that, I am not sure …." Mother also stated she was not a registered member of any tribe and did not know of any family member who was a registered member of any Indian tribe.

The maternal grandmother was at the January 8, 2015, hearing and told the juvenile court that her "great grandmother Washington was Cherokee Indian and she was raised on the plantation." County Counsel responded that the department would send ICWA notices and asked if anyone else in the family would have more information on the Indian heritage. The grandmother replied, "No." The juvenile court directed notice be sent to "the Cherokee Nation."

The report for the section 366.21, subdivision (f), hearing reiterates the previous finding that the ICWA does not apply. There are no ICWA forms or responses attached. The report also states that father was released from prison on February 21, 2015; mother reported she planned to marry father, but father claimed he was not in a relationship with mother even though they lived together. The report recommended that services for both parents be terminated and a section 366.26 hearing be set.

The section 366.21, subdivision (f), hearing was held on April 30, 2015. Father was present through his attorney, who requested a contested hearing. Mother also requested a contested hearing. The contested section 366.21, subdivision (f), hearing was set for May 28, 2015.

Father appeared through counsel at the May 28, 2015, hearing. Father had not visited T.H. because his parole officer would not allow him to leave Los Angeles County, and father would not provide the social worker with the parole officer's name to enable her to arrange visits. The social worker offered to transport father for visits, but he was only willing to visit on weekends when the social worker did not work. Father's counsel stated the only issue was visitation and submitted.

The juvenile court noted that T.H. had been in the dependency system for about 19 months, and reunification services needed to be terminated unless the children could safely be returned home. Father had completed the required parenting class but had failed to complete the substance-abuse counseling and domestic-violence programs. Father also tested positive multiple times for marijuana and, although he claimed he had a medical marijuana prescription, had failed to produce one. Father had not visited with T.H., as required by his case plan.

The trial court ordered reunification services terminated and a section 366.26 hearing scheduled. The juvenile court directed that the parents be provided "with their right to file a writ" and specifically ordered the information be given to father "so he can exercise his rights on that." No writ was filed.

A section 366.26 hearing was scheduled for September 22, 2015. The report for the hearing indicated the current caregiver, the maternal great-aunt, was not willing to adopt, but was willing to be the permanent legal guardian. The children, including T.H., had been placed with the maternal great-aunt for almost two years, and the social worker recommended a plan of legal guardianship.

On September 18, 2015, mother filed a section 388 petition seeking return of the children to her. The juvenile court scheduled the hearing on the section 388 petition for the same date and time as the section 366.26 hearing. Neither parent was in court on September 22; mother's counsel requested a contested hearing on the section 388 petition and the permanent plan.

A response to the section 388 petition was filed by the department. Mother had been interviewed again on September 25, 2015, about her Indian heritage and had reported that she "has it on both her maternal and paternal side"; however, she only provided information on the maternal family members. Mother did not show up for an appointment with the department to sign the ICWA forms; the department had to go to her home to get a signature. With the information provided, the forms were sent on October 5, 2015, to the Blackfoot Tribe, Cherokee Nation, Bureau of Indian Affairs (BIA), and Secretary of the Interior (Secretary).

The contested hearing on October 6, 2015, was the first time father appeared in person in court. The juvenile court first addressed the section 388 petition. T.H.'s guardian testified via telephone. She stated that father sent T.H. cards when he was incarcerated; however, father had made no attempt to contact T.H. after father's release from prison. The guardian was agreeable to having father visit T.H. as long as it was not in her home. Several other witnesses, including mother, testified. Ultimately, the juvenile court denied the section 388 petition.

The juvenile court next turned to the section 366.26 hearing. Father's counsel stated that father was seeking visitation. The juvenile court noted the guardian had no objection to visits, so long as it was not in her home. Father's counsel responded, "[i]t can be wherever is best" and submitted the matter. The juvenile court suggested once-per-month visits, supervised; counsel for T.H. agreed, with the proviso the guardian be able to increase visitation at her discretion.

5.

County counsel noted that ICWA notices had been sent, but it was too soon to have received responses.  It was noted that neither father, mother, nor T.H. were enrolled members of any tribe.  County counsel also noted that the children were placed with a maternal relative; parental rights were not being terminated; and legal guardianship, not adoption, was the recommended permanent plan.

The juvenile court decided to proceed with the relative guardianship and terminate dependency proceedings.  The juvenile court ordered monthly supervised visitation for father, with the guardian having discretion to increase visits.

At the October 6, 2015 hearing, no party raised an objection to proceeding before responses to the ICWA notices could be received.  Neither father nor mother offered any further information or assertion of Indian heritage.  No party requested a continuance of the hearing in order to receive responses to the ICWA notices.

Father filed a notice of appeal on October 23, 2015.

## *DISCUSSION*

Father contends the juvenile court's order must be reversed because:  (1) the department failed to make inquiry of him as required by the ICWA, therefore the ICWA notices were inadequate; and (2) the ICWA notices were mailed only four days before the section 366.26 hearing where the juvenile court adopted a plan of legal guardianship and terminated the dependency.

### I.     *ICWA*

The ICWA was enacted to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture .…" (25 U.S.C. § 1902.)  To achieve this purpose, the ICWA requires notice be given to the child's tribe "where the court knows or has reason to know that an Indian child is involved .…" (25 U.S.C. § 1912(a).)  The tribe's response will

6.

determine if the child is an Indian child. (*Ibid.*; see also *In re Desiree F.* (2000) 83 Cal.App.4th 460, 470 ["one of the primary purposes of giving notice to the tribe is to enable the tribe to determine whether the child involved in the proceedings is an Indian child."].) An Indian tribe means a federally recognized Indian tribe. (25 U.S.C. § 1903(8).)

State law imposes on both the juvenile court and the county welfare agency "an affirmative duty to inquire whether a dependent child is or may be an Indian child." (*In re Nikki R.* (2003) 106 Cal.App.4th 844, 848; § 224.3, subd. (a); Cal. Rules of Court, rule 5.481(a).) If the agency or the court "knows or has reason to know that an Indian child is involved, the social worker … is required to make further inquiry regarding the possible Indian status of the child" to facilitate the provision of notice. (§ 224.3, subd. (c); see also *In re Alice M.* (2008) 161 Cal.App.4th 1189, 1200.)

The ICWA defines an Indian child as "a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (*In re H.B.* (2008) 161 Cal.App.4th 115, 120, citing 25 U.S.C. § 1903(4).) The necessity of a biological tie to the tribe is underlined by the ICWA definition of a "parent" as "any biological parent or parents of an Indian child …." (25 U.S.C. § 1903(9).)

## II.    ICWA notice

Father contends the juvenile court's order must be reversed because the ICWA notice was inadequate and the order was issued only a few days after ICWA notices were sent to tribes, the BIA, and the Secretary. Father contends the department's ICWA inquiry was inadequate because the department failed to make inquiry of him as to his Indian heritage.

Father contends this appeal is the first opportunity to challenge the juvenile court's finding on the ICWA. In *In re Pedro N.* (1995) 35 Cal.App.4th 183 at pages 185 and 189 (*Pedro N.*), we held that a parent who fails to challenge a juvenile court's action timely

regarding the ICWA is foreclosed from raising ICWA issues, once the juvenile court's ruling is final, in a subsequent appeal from later proceedings. The proper time to raise such issues is after the disposition hearing. The juvenile court's rulings and findings at the disposition hearing are appealable upon a timely notice of appeal. We noted in *Pedro N.* that the parent there was represented by counsel and failed to appeal the juvenile court's orders from the disposition hearing. (*Pedro N., supra,* at pp. 189-190.)

In the instant action, the initial finding that the ICWA was inapplicable to T.H. was made long before the section 366.26 hearing was held; it was made in Los Angeles County before the transfer-in of the case to Tulare County; the jurisdiction and disposition hearings were held in Los Angeles County. The report for the section 366.21, subdivision (e), hearing and the report for the April 30, 2015, section 366.21, subdivision (f), hearing repeat the finding that the ICWA does not apply to T.H. The initial finding that ICWA did not apply was made in Los Angeles County in 2013, but no appeal or writ was filed until 2015.

Section 224.3, subdivision (e)(3), provides that the juvenile court may determine the ICWA does not apply if proper notice has been provided and neither a tribe nor the BIA has provided a determinative response within 60 days after receiving the notice. Here, the juvenile court in Tulare County made its finding at the section 366.26 hearing after notice had been given, but 60 days or more had not passed since the notices were issued. This, however, was long after the Los Angeles County court had acted.

Father appeared through counsel at the May 28, 2015, hearing and was advised of the need to appeal if he had any objections to the juvenile court's findings and orders. He was at all times in these proceedings represented by counsel. Father never filed an extraordinary writ or an appeal until after the section 366.26 hearing.

There were multiple status review hearings and other hearings where father had an opportunity to raise the ICWA issue after disposition and before the section 366.26 permanent plan hearing. When the section 366.26 hearing was scheduled, father was

required to file a writ in order to challenge any findings or orders leading to the setting of the section 366.26 hearing, including any issues regarding an ICWA finding; he did not do so. (*In re Anthony B.* (1999) 72 Cal.App.4th 1017, 1021-1022.)

Section 366.26, subdivision *l,* "applies to all 'issues arising out of the contemporaneous findings and orders made by a juvenile court in setting a section 366.26 hearing.'" (*In re Anthony B.*, *supra*, 72 Cal.App.4th at p. 1021.) Section 366.26, subdivision *l*(2), provides that failure to file a writ petition for extraordinary writ review within the period specified "shall preclude subsequent review by appeal of the findings and orders made pursuant to this section."

Our holding in *Pedro N.* is fully applicable here. Father did not object during the section 366.26 hearing or at any time prior to that hearing to a lack of ICWA inquiry or proper ICWA notice. He waited until the end of the proceedings and after the section 366.26 hearing to object to the juvenile court's earlier rulings finding the ICWA inapplicable to this case, and by his prior silence, has forfeited his right to complain about any procedural deficiencies in compliance with the ICWA in the instant appeal. (*Pedro N., supra,* 35 Cal.App.4th at pp. 185, 189-190.)

We also note that, while father contends the department failed to make any inquiry of him regarding ICWA, nowhere in his appellate brief does father assert that he has any Indian heritage.

To the extent father relies on cases such as *In re Marinna J.* (2001) 90 Cal.App.4th 731, 737-739 and *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 261, cases that disagreed with *Pedro N.*, relying on the theory that *Pedro N.* is inconsistent with the protection and procedures afforded by the ICWA to the interest of Indian tribes, we are not persuaded.[2]

---

[2]The California Supreme Court has granted review in *In re Isaiah W.* (2014) 228 Cal.App.4th 981 (review granted Oct. 29, 2014, and depublished, case No. S221263) to

We further note that *Pedro N.* does not foreclose a tribe's rights under the ICWA due to a parent's forfeiture or waiver of the issue for failing to file a timely appeal when procedurally entitled to do so at the conclusion of an earlier proceeding. (*Pedro N., supra,* 35 Cal.App.4th at pp. 185, 189-190; see *In re Desiree F., supra,* 83 Cal.App.4th at pp. 477-478 [wherein we reversed juvenile court's denial of tribe's motion to intervene after final order terminating parental rights and invalidated actions dating back to outset of dependency that were taken in violation of ICWA].) We note there is no evidence in the record that any tribe responded and claimed T.H. as eligible for protection under the ICWA. Should any tribe so indicate, its rights under the ICWA are not foreclosed.

In *Pedro N.*, we held we were addressing only the rights of the parent to a heightened evidentiary standard for removal and termination, not those of the tribe (*Pedro N., supra,* 35 Cal.App.4th at p. 191) or, for that matter, the rights of the child. As a result, we conclude father has forfeited his right to complain of any alleged defect in compliance with the ICWA.

T.H. was in the dependency system for at least two years before the section 366.26 hearing; he was placed with a maternal great-aunt; visitation was afforded father; and the dependency was dismissed. A dependent child's interest in permanency and stability requires that we adhere to the provisions of section 366.26, subdivision *l,* and that there be a time limit on a parent's ability to raise the issue of ICWA compliance. We see no reason to create instability for T.H. when father failed to act for a period of two years after the finding that the ICWA did not apply was made by the juvenile court. (*Pedro N., supra,* 35 Cal.App.4th at pp. 185, 189-190.)

---

consider whether a parent who did not appeal an earlier finding on the ICWA was foreclosed from raising an ICWA issue in an appeal from a termination of parental rights.

## ***DISPOSITION***

The order establishing a permanent plan of legal guardianship for T.H. and dismissing the dependency action is affirmed.